# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JANE WASHBURN ROBINSON, | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | Case No. 07 CV 01072 (PLF) |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

## DEFENDANT WMATA'S OPPOSITION TO THE PLAINTIFF'S MOTION TO COMPEL

The Defendant, through counsel, and pursuant to Fed. R. Civ. P. 37, comes before this Court and opposes the Plaintiff's Motion to Compel Discovery. Plaintiff has six (6) areas of objection to the responses by the Defendant WMATA to its discovery requests. The Defendant responds to each seriatim. Defendant has incorporated into the Memorandum the discovery requests and its responses thereto for each category of complaint.

1. Witness Statements

Plaintiff made the following Request for Documents and Interrogatory and the Defendant responded as noted:

1.      All documents relating to the Accident, including:
        (i) all documents relating to any investigation or inquiry into the Accident;

1

(ii) all documents relating to the Accident that were created for or by any insurer of WMATA;

(iii) all documents relating to the Accident that are required to be maintained by any laws, regulations, codes, or standards, including those of federal, state, or municipal governments or administrative agencies;

(iv) all documents containing or relating to statements of persons who have knowledge of the facts and circumstances concerning the Accident;

(v) all documents relating to any communications between WMATA and any person regarding the Accident; and

(vi) all documents relating to communications to or from the Bus Driver relating to the Accident.

**RESPONSE:** Objection. This request for documents is overly broad and burdensome. In addition, as identified in the Defendant's Responses to Plaintiff's Interrogatories, documents which were and are created and are intended for use in litigation, are privileged pursuant to the attorney work product privilege and will not be produced. Those documents include the recorded statements which are described in the privilege log contained in the Defendant's Responses to Interrogatories, the file created by the Office of Third Party Liability at WMATA. In addition, the request includes correspondence privileged pursuant to the attorney client privilege and documents in the litigation file of counsel for the defendant which are also privileged pursuant to the attorney client and attorney work product privilege. Without waiving the objection, the Defendant states that non-privileged documents relating to the internal investigation of this incident have previously produced in the Defendant's initial disclosures. There are no other non-privileged documents responsive to this request.

2.    Identify any recorded statements by persons who have knowledge of the facts and circumstances concerning the Accident.

**ANSWER:**    WMATA objects to this interrogatory to the extent it violates the attorney work product privilege.   WMATA further responds that it has no signed statements responsive to this Interrogatory. WMATA is withholding on grounds of work product privilege the following recordings:
Alzita Welles, witness, recorded on September 26, 2005 by WMATA investigator; Kevin McILwain, bus driver, recorded on November 9, 2005 by WMATA investigator; Lydia Gumbs, recorded on September 25, 2005 by WMATA investigator.

Plaintiff complains that the Defendant has in its possession "witness

2

statements" that she contends should be produced in response to the Plaintiff's

First Request for the Production of Documents #1 and identified in answer to

Interrogatory #2.  The Defendant has made clear in its response to Request #1,

that these are neither recorded, nor signed nor hand written narrative statements by

witnesses.  In support of her position presented to the Court in the Motion to

Compel, Plaintiff glosses over and omits the true description of the documents

which Defendant WMATA withheld on the grounds of attorney work product.  As

explained in the Defendant's response and explained again herein, these are not

"statements" as that term has been utilized in the case law relied upon by the

Plaintiff.  The documents withheld are documents created by WMATA employees

of the Third Party Liability (TPL) Section and are the recordings of telephone

interviews.  The interviewer/investigator asks questions of the individual who has

been identified as a witness.  Those questions are drafted by the investigator and

are the result of skills honed as a liability investigator in investigating claims made

against WMATA.   Follow-up questions are also asked, based upon the information

obtained from the individual at the time of the initial interview or at a later date.

The purpose of this investigative work is to determine the potential exposure which

the Authority may be facing as a result of the incident or accident, to make sure

that sufficient reserves are established to cover any claims filed and to attempt to

settle any claims filed.   As is standard procedure, the interviews, as in the case-at-

bar, were not conducted in the context solely of a safety assessment or for other

purposes within WMATA, but were taken and completed, in large part, in

3

anticipation of litigation.   TPL has responsibility within WMATA for the investigation of accidents and incidents.  All incidents involving pedestrians are automatically forwarded to TPL for investigation, in part, because the likelihood of a claim being made is very high.

Johnson v. Washington Metropolitan Area Transit Authority, Civil Action No. 86-3110-LFO,  D.D.C. July 26, 1990, is cited by and relied upon by the Plaintiff in support of her contention.[1]  However, a close reading of that decision, and the reasoning for the Court's ruling, highlight its differences from the case-at-bar.  As noted above, the taped interviews were not "statements" provided by witnesses and they were not taken on the scene or within one or two days of the incident, as they apparently were in Johnson.  These interviews of Ms. Gumbs and Ms. Welles were conducted on September 25, 2005.  Additionally, unlike Johnson, Defendant WMATA interviewed the same individuals identified on the MPD PD 10 report.  Also, unlike  Johnson, the identity of these individuals was disclosed in full, by WMATA, with all the information available to the Defendant WMATA on August 31, 2007, in its initial disclosure required by the Fed. R. Civ. P. 26(a)(1) and not four (4) years after the accident as was the case in Johnson.  The information which WMATA has regarding these witnesses is no different from the information contained in other public records.  The same individuals identified in the Defendant's reports were also identified in the Metropolitan Police Department

---

[1]This case is unreported and is attached hereto for the Court's review.

Accident Report, PD 10.

Additionally, Plaintiff contends that she is in need of the "statements" because she has been unable to reach the witnesses herself and thus she has sustained "substantial need and undue hardship". The allegation is that "counsel for Plaintiff has attempted to contact the witnesses, but has been unable to reach them." (Memorandum In Support of Plaintiff's Motion to Compel Discovery at page 4). Counsel fails to provide any information regarding exactly what effort he has made to contact these individuals or when such an effort was made. On the day of the previously scheduled status conference before this Court, undersigned counsel tested this allegation by calling one of the witnesses, Ms. Williams, at the telephone number provided by the witness. That is the same number which is listed in the WMATA reports provided to Plaintiff's counsel on August 31, 2007 with the Defendant's initial disclosures, and is also the same number listed on the MPD PD 10. Counsel reached Ms. Williams on her initial attempt. Today, February 12, 2008, counsel attempted to reach Alzira Weiles (or Welles) at the telephone number previously provided to Plaintiff's counsel and also noted on the MPD PD 10. That continues to be a working number for Ms. Weiles. Counsel left a message requesting a call back from the witness.

Counsel for the Plaintiff notified WMATA claims department (TPL) on December 23, 2005, by letter, that he was representing the Plaintiff. That letter was sent only three (3) months after the accident. With some due diligence, the identity of those persons was known, or could have been known, to the Plaintiff at

5

that time and even before.  The information regarding Ms. Lydia Gumbs was

accurate until the summer of 2006 when she left her employment at the Embassy

of St. Vincent and the Grenadines.  However, a simple Internet search for Ms.

Gumbs on www.whitepages.com reveals a home address for her as 101 G Street,

S.W., Apt. 202, Washington, D.C. 20024-4305.  There is no telephone number

listed.  This address is a variation of the information which WMATA has provided

to Plaintiff's counsel and which WMATA had for this individual.

The telephone number for Mr. Job Randolph remains a working number.

Plaintiff's counsel's failure to follow-up with these witness on a timely basis

cannot, and should not, serve as a reason to invade WMATA's attorney work

product privilege and require the production of the record of the investigator's

interviews of two of these persons.

The Defendant has only two recorded interviews in addition to a recorded

interview of its bus operator employee.  None of these statements are producible,

and all are protected by the attorney work product privilege.

2. <u>Personnel File and Other Information of Bus Operator Kevin McIlwain</u>

Plaintiff's Requests for Documents  and Defendant WMATA's responsea

thereto are as follow:

2.    All documents relating to the Bus Driver, including all documents
relating to:
(i) the Bus Driver's driving record, including any driving infractions,
safety violations, accidents, accidents, citations, penalty points, driver's
license revocations, driver's license reinstatements;
(ii) Traffic Violations involving the Bus Driver;
(iii) Pedestrian Incidents involving the Bus Driver;

(iv) any civil, criminal, or administrative investigation of the Bus Driver by any governmental agency, including federal, state, municipal, or local authorities;

(v) the safety performance of the Bus Driver;

(vi) the personnel file of the Bus Driver;

(vii) the Bus Driver's work and rest schedule or hours calculations, including time sheets;

(viii) records of health insurance claims, disability claims, sickness, mental illness, or doctors' excuses of the Bus Driver;

(ix) any investigations or disciplinary proceedings relating to the Bus Driver; and

(x) WMATA's training, testing, monitoring, and supervision of the Bus Driver.

**RESPONSE:** Objection. This request for documents seeks information regarding matters for which WMATA is absolutely immune, such as training, supervision, hiring and/or which are not subject to production, such as, disciplinary records. In addition, the Bus Operator's personnel file contains personal, private and proprietary documents which WMATA is not permitted to produce pursuant to its own internal policies and procedures.

4.    Identify and describe any instance in which the Bus Driver was accused by any person of violating any law, regulation, code, guideline, or standard (including the common law standard of reasonable care). For each instance, provide the date of the violation, or alleged violation, a description of the incident, and the name of the person or persons who were involved in the violation.

**ANSWER:** Objection. This request for documents seeks information regarding matters for which WMATA is absolutely immune, such as training, supervision, hiring and/or which are not subject to production, such as, disciplinary records. In addition, the Bus Operator's personnel file contains personal, private and proprietary documents which WMATA is not permitted to produce pursuant to its own internal policies and procedures.

5.    Identify any instance in which the Bus Driver was involved in a Pedestrian Incident.

**ANSWER:** Objection. This request for documents seeks information regarding matters for which WMATA is absolutely immune, such as training, supervision, hiring and/or which are not subject to production, such as, disciplinary records. In addition, the Bus Operator's personnel file contains

personal, private and proprietary documents which WMATA is not permitted to produce Pursuant to its own internal policies and procedures.

6.    Identify any investigations or disciplinary proceedings relating to the Bus Driver.

**ANSWER:** Objection.  This request for documents seeks information regarding matters for which WMATA is absolutely immune, such as training, supervision, hiring and/or which are not subject to production, such as, disciplinary records.  In addition, the Bus Operator's personnel file contains personal, private and proprietary documents which WMATA is not permitted to produce Pursuant to its own internal policies and procedures.

The Plaintiff's asserted justification for the production of material regarding Bus Operator McIlwain's driving record, personal health information, his personnel file which includes a variety of documents about Mr. McIlwain's personal decisions regarding employment benefits, job references, prior work evaluations, etc and other information, stands on its head the requirement that discovery be designed to either produce admissible, relevant information, or that it lead to the production of relevant or otherwise admissible information.  Plaintiff argues that she should be given this information, so that if counsel asks Mr. McIlwain a question regarding any of this information, and Mr. McIlwain provides an answer which is contrary to information in the file, counsel should be able to impeach his credibility with that information.  Under this line of reasoning, information about wildly irrelevant issues, would always be producible, and counsel would have unfettered reign to delve into any part of an individual's personal business that they wanted, without any limitation by the Court, including information protected by doctor patient privilege.  To further analogize, under this line of thinking, Plaintiff could

8

justify a request for the Bus Operator's high school transcript and impeach the deponent, if he misrepresents his grade in 11th grade Algebra!

In addition to the fact that the requests for information in this request for documents have no time limitations, they include requests for expert opinion evidence by WMATA officials, decisions on fault, discipline, violations of SOP's, who will not be called to testify at trial. Such information is discoverable pursuant to Fed. R. Civ. P. 26(b)(4)(B) only upon a showing of "exceptional circumstances." Plaintiff has failed to even address what the "exceptional circumstances" are that would justify compelling such information. Plaintiff also seeks mental health information, information without limitation regarding work schedules, etc. The requests as phrased, even if the Court were to rule that any of the information should be produced, is burdensome and can only be intended to harass the Defendant.

Plaintiff argues that the Defendant cannot rely on its own internal policies and procedures, which preclude production of this information, to avoid the production of information personal to its employees. However, Plaintiff appears to be unaware of the unique entity that WMATA is. When the Courts have evaluated the policies and procedures of this tri-jurisdictional entity, they have held that its own polices and procedures do have the force of law.

WMATA in an interstate compact agency, governed by a Board of Directors. D.C. Code Ann Section 9-1107.01(2001). Section 12 of the WMATA Compact empowers the Board of Directors to enact rules respecting the exercise of Compact

9

powers, which have the power of law.  Among those rules is WMATA

Policy/Instruction 9.2, Privacy.  Under the Privacy Policy, releasing individual

information from WMATA systems of records requires proper authority.  Privacy

Policy Section 6.1.  WMATA interprets and applies its Privacy Policy consistent

with the Federal Privacy Act, 5 U.S.C. Section 552a.  Policy Section 1.0.  Under

the Privacy Policy and federal law and practice, in order for WMATA to release the

records requested, Plaintiff must provide either the individual employee's

authorization or a judge-issued subpoena.  Administrative subpoenas, subpoena

forms completed by attorneys and subpoenas pre-signed by the Court Clerks or

Judges are not Judge-issued subpoenas.  Doe v. Stephens, 851 F.2d 1457 (D.C.

Cir. 1988); Doe v. DeGenova, 779 F.2d 74 (D.C.Cir. 1985).  Therefore, without

either a notarized authorization from Kevin McIlwain, a Judge-issued subpoena or a

court order, WMATA cannot produce the documents requested.

3. Accidents At or Within 1000 Yards of the Intersection

Plaintiff has requested information regarding other accidents at or within

1000 yards of the intersection in question.

3.    All documents relating to any Traffic Violations or Pedestrian Incidents
at or within 1000 yards of the Intersection.

**RESPONSE:** Objection.  As explained in Defendant's Responses to
Interrogatories, this information is neither available to WMATA nor retrievable
or catalogued either in the normal course of business or in the format
requested.  In addition, the request on its face is burdensome in that it fails
to provide a date range, and seeks information unrelated to WMATA or its
Bus Operators and other employees who operate non-revenue vehicles as
well as incidents unrelated to WMATA and not in the possession of WMATA.
Specifically, the phrasing of the request requires the Defendant to identify

incidents involving hundreds, and probably thousands, of intersections in the Greater Washington Metropolitan Area as WMATA operates in three different jurisdictions.  Further, if such information were available, it could not possibly lead to any admissible evidence with respect to the issues in this case which are limited to one accident.

7.    Identify any Traffic Violations or Pedestrian Incidents at or within 1000 yards of the Intersection.

**ANSWER:**  Objection.  This information is neither available to WMATA nor retrievable or catalogued either in the normal course of business or in the format requested.  In addition, the request on its face is burdensome in that it fails to provide a date range, and seeks information unrelated to WMATA or its Bus Operators and other employees who operate non-revenue vehicles, as well as incidents unrelated to WMATA and not in the possession of WMATA.  Specifically. the phrasing of the request requires the Defendant to identify traffic control signal violations involving hundreds of traffic controls in the Greater Washington Metropolitan Area as WMATA operates in three different jurisdictions.  Further, if such information were available, it could not possibly lead to any admissible evidence with respect to the issues in this case which are limited to one accident.

While the Plaintiff now explains that she is interested in this data as it applies to WMATA vehicles, the request as phrased goes far beyond that more limited request. However, what is still flawed about this request is that it provides no date ranges and includes, theoretically, information about such incidents involving, not only revenue vehicles, Metrobusses, but also non-revenue vehicles.  While in a lengthy discussion with Plaintiff's counsel, undersigned counsel sought to obtain a refinement of the request to identify a time period and a specification as to what types of vehicles were involved, no narrowing of the request was forthcoming.

Counsel is able to provide information from July 1, 1999 with respect to pedestrian accident involving Metrobusses based out of the Western Division

11

Garage located at Friendship Heights.  No further refinement of this information is available, including dates.  Otherwise, the information simply does not exist in a form or format which is producible.  To be required to cull through the back-up documentation, to the extent it is still in existence, would be burdensome and not designed to lead to any admissible information.

4. Traffic Control Signal Violations and Pedestrian Incidents

The Interrogatories and Requests for Documents and the Defendant's responses thereto are as follows:

8.    Identify any Traffic Control Signal Violations after January 1, 2000.

**ANSWER:** Objection.  This information is neither available to WMATA nor retrievable or catalogued either in the normal course of business or in the format requested.  In addition, the request on its face is burdensome in that it fails to provide a date range, and seeks information unrelated to WMATA or its Bus Operators and other employees who operate non-revenue vehicles.

9.    Identify any Pedestrian Incidents after January 1, 2000.

**ANSWER:**  Objection. This information is neither available to WMATA nor retrievable or catalogued either in the normal course of business or in the format requested.  In addition, the request on its face is burdensome in that it seeks information related to WMATA and its Bus Operators and other employees who operate non-revenue vehicles, as well as incidents unrelated to WMATA and not in the possession of WMATA.  Specifically, the phrasing of the request requires the Defendant to identify traffic control signal violations involving hundreds of traffic controls in the Greater Washington Metropolitan Area as WMATA operates in three different jurisdictions.  Further, if such information were available, it could not possibly lead to any admissible evidence with respect to the issues in this case which are limited to one accident.

4.    All documents relating to any Traffic Control Signal Violations after January 1, 2000.

**RESPONSE:** Objection.  As explained in Defendant's Responses to

12

Interrogatories, this information is neither available to WMATA nor retrievable or catalogued either in the normal course of business or in the format requested.  In addition, the request on its face is burdensome in that it seeks information unrelated to WMATA or its Bus Operators and other employees who operate non-revenue vehicles.  The phrasing of the request also requires the Defendant to identify traffic control signal violations involving hundreds of traffic controls in the Greater Washington Metropolitan Area as WMATA operates in three different jurisdictions.  Further, if such information were available, it could not possibly lead to any admissible evidence with respect to the issues in this case which are limited to one accident.

5.    All documents relating to any Pedestrian Incidents after January 1, 2000.

**RESPONSE:**  Objection.  As explained in Defendant's Responses to Interrogatories, this information is neither available to WMATA nor retrievable or catalogued in the normal course of business and in the format requested. In addition, the request on its face is burdensome in that it seeks information described as "all documents" which were created regarding other incidents and which are unrelated to WMATA or its Bus Operators and other employees who operate non-revenue vehicles.  Even if the request were to be further defined to seek "all documents relating to any Pedestrian Incidents" involving WMATA vehicles, it would still be burdensome and fail to lead to any otherwise admissible documentation or information.  Further, as phrased the request seeks information pertaining to both Bus and Rail and is objectionable for the same reasons identified herein.

Although the Plaintiff in her motion to compel indicates that the information requested is limited to WMATA vehicles, apparently both revenue and non-revenue vehicles, the questions on their face are not limited even in that way.  However, even if the requests were so limited, information is simply not maintained and categorized in this way by the Authority.  The Defendant is not required to re-work the data to conform to the Plaintiff's request.   As the objection clearly states, as phrased this information encompasses both Rail and Bus with no time limitation. The reasoning for the request underscores that this is designed as nothing more

13

than a fishing expedition.  On its face, it is burdensome and oppressive.

5. <u>Training Documents of WMATA Employes</u>

Plaintiff propounded the following requests for documents and

interrogatories.  The Defendant responses to each are included in the

following text:

6.    All documents relating to training provided to WMATA employees
      regarding compliance with Traffic Control Signals.

**RESPONSE:**  Objection.  WMATA is immune from claims challenging
WMATA's hiring, training, and supervision of its employees  <u>See</u> <u>Burkhart v.</u>
<u>WMATA</u>, 112 F.3d 1207 (D.C. Cir. 1997). Therefore, this interrogatory
seeks information which is neither relevant nor otherwise admissible, nor
would it lead to any information which is admissible.

7.    All documents relating to any training provided to WMATA employees
regarding the safety of pedestrians.

**RESPONSE:** Objection.  WMATA is immune from claims challenging
WMATA's hiring, training, and supervision of its employees  <u>See</u> <u>Burkhart v.</u>
<u>WMATA</u>, 112 F.3d 1207 (D.C. Cir. 1997). Therefore, this interrogatory
seeks information which is neither relevant nor otherwise admissible, nor
would it lead to any information which is admissible.

10.    Identify any training provided to WMATA employees regarding
compliance with Traffic Control Signals.

**ANSWER:**  Objection.  WMATA is immune from claims challenging
WMATA's hiring, training, and supervision of its employees  <u>See</u> <u>Burkhart v.</u>
<u>WMATA</u>, 112 F.3d 1207 (D.C. Cir. 1997). Therefore, this interrogatory
seeks information which is neither relevant nor otherwise admissible, nor
would it lead to any information which is admissible.

11.    Identify any training provided to WMATA employees regarding the
safety of pedestrians.

**ANSWER:**  Objection.  WMATA is immune from claims challenging
WMATA's hiring, training, and supervision of its employees  <u>See</u> <u>Burkhart v.</u>
<u>WMATA</u>, 112 F.3d 1207 (D.C. Cir. 1997). Therefore, this interrogatory

14

seeks information which is neither relevant nor otherwise admissible, nor would it lead to any information which is admissible.

Plaintiff argues that she is not bringing a claim for negligent hiring, supervision or training and that, therefore, the Defendant's objection is unsupported. She further argues that the suit against WMATA is a respondeat superior suit based upon the operator's negligence.  Again, the Plaintiff also argues that information regarding pedestrian safety, admittedly learned in training, could impact the Operator's credibility.  WMATA employees are immune from suit, so all negligence actions must be brought against the entity and not the individual.[2]  The only context in which training, supervision and hiring arises, therefore, is in the very context of this type of case.  Although the Plaintiff has not called the cause of action one for negligent hiring, training and supervision, she cannot now circumvent the prohibition against arguing such matters in a suit against WMATA by calling it simple negligence.  Training records are still not relevant and cannot lead to any relevant or otherwise admissible evidence.

6. Document Relating to WMATA's Response to Traffic Control Signal Violations or Pedestrian Incidents

   8.    All documents relating to any action, precaution or remedy that WMATA has taken in response to Traffic Control Signal Violations or Pedestrian Incidents.

   **RESPONSE:** Objection.  This information, if available, constitutes subsequent

---

   [2]Section 80 of the WMATA Compact provide in pertinent part that "[t]he Authority shall be liable for its ... torts and those of its...employees...committed in the conduct of any proprietary function...[and} [t]he exclusive remedy for such...torts...shall be suite against the Authority."

15

remedial measures which are not admissible nor could they lead to any otherwise admissible information.  The request is also so broad as to not be answerable as phrased and provides no date range within which the documents are to apply.

It is unclear to what documents the Plaintiff is referring.  All reported accidents and incidents are investigated by WMATA, system wide without regard to the reason for the accident or incident.  Defendant assumes that this information is what is referred to by the Plaintiff as "WMATA's response." As with the other requests, there is no time limitation on this request making it burdensome and oppressive as phrased.  It appears to encompass documents system-wide, the District of Columbia, Maryland and Virginia and also both Rail and Bus Division. While there is a category for statistics regarding the number of and location of pedestrian accidents in the computer based system maintained by WMATA, to require the Defendant to run a request for information regarding pedestrian accidents involving both Bus and Rail, system wide, is an enormous and burdensome undertaking.  Such information on the Bus side, would have to be run by Division. The Defendant would then be required to search within each entry and manually search for the actual documents regarding each incident, retrieve them, redact any privileged material from the documents, copy them and provide them to counsel.  All but the most recent documents are maintained in the WMATA storage facility. Such a search would require countless employee hours.   Plaintiff's stated purpose for the request is "show whether WMATA and the bus driver had a heightened awareness of problems with these types of incidents and how they responded to

them.  WMATA's actions taken in response to these issues bear directly on whether the bus driver had an incentive to be careful."

It is unclear how system wide statistical information and back-up documentation would shed any light on this issue, which is not obviously relevant to the very fact-specific accident at issue.

Respectfully submitted,

_____/s/_____
Kathleen A. Carey #357990
Assistant General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1496
Kcarey@wmata.com

_____/s/_____
David J. Shaffer #413484
Assistant General Counsel
600 Fifth St., N.W.
Washington, D.C. 20001
(202) 962-2820
Attorneys for Defendant WMATA
Dshaffer@wmata.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the Memorandum in Opposition to the

Plaintiff's Motion to Compel was served through the Court efiling this 12th Day of

February, 2008 to:


F. Lane Heard III
Richmond T. Moore
Williams & Connolly LLP
725 12th Street, N.W.
Washington, D.C.  20005


                                        _____/s/_____
                                        Kathleen A. Carey

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JANE WASHBURN ROBINSON, | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | Case No. 07 CV 01072 (PLF) |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## O R D E R

This matter came before the Court pursuant to the Plaintiff's Motion to Compel.  After considering the Motion, the Defendant's Memorandum in Opposition thereto and the record in this case, the Court finds and concludes that the motion should be denied.

Therefore, it is this _____ Day of _____, 2008

ORDERED that the Plaintiff's motion to compel be, and the same hereby is, DENIED.

_____
Magistrate Judge Sandra Robinson
United States District Court for the
District of Columbia

19

copy to:

F. Lane Heard III
Richmond T. Moore
Williams & Connolly LLP
725 12th Street, N.W.
Washington, D.C.  20005

Kathleen A. Carey
WMATA
Assistant General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001

David J. Shaffer
WMATA
Assistant General Counsel
600 Fifth St., N.W.
Washington, D.C. 20001

Kathleen Carey - NAME___Johnson___and___NAME___was.wpd

1990 U.S. Dist. LEXIS 9471, *

18 of 22 DOCUMENTS

**ELEANOR T. JOHNSON, et al., Plaintiffs, v. WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant**

**Civil Action No. 86-3110-LFO**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*1990 U.S. Dist. LEXIS 9471*

**July 26, 1990, Decided
July 26, 1990, Filed**

**JUDGES:** [*1] Louis F. Oberdorfer, United States District Judge.

**OPINION BY:** OBERDORFER

**OPINION**

*MEMORANDUM AND ORDER*

Plaintiffs move for an order compelling defendant to produce witness statements elicited by defendant WMATA's investigators from eleven witnesses at, or within six days of, the time of the tragic accident at issue on the merits here. When plaintiffs originally requested the statements, defendant refused to produce them on the ground that they were protected from discovery by the work product doctrine. Defendant now opposes the motion on the same theory and argues that they were not obtained as part of defendant's routine investigative procedures, but were taken solely at defendant's direction in anticipation of litigation.

The matter was originally referred to Magistrate Patrick Attridge who in a series of rulings directed production to plaintiffs of incident and accident reports prepared by defendant's employees and presentation of the witness statements for inspection *in camera.* By Order dated December 1, 1987, the Magistrate declined to order production of the statements because defendant had already provided plaintiffs with the name and address of each witness. Since plaintiffs could interview [*2] the non-employee witnesses so named, Magistrate Attridge reasoned, plaintiffs had no "substantial need" for the statements taken and retained by defendant.

Thereafter, plaintiffs sought *de novo* action in this Court on its motion to compel production of the statements by non-employee witnesses. However, the award of summary judgment for defendant appeared to moot the issue raised by defendant's refusal to produce the witness statements. *See* Order dated January 27, 1988; *see also* Memorandum dated February 5, 1988. The Court of Appeals' reversal of the summary judgment revives the issue with respect to the non-employee witness statements. *See Johnson v. Washington Metro. Area Transit Auth., 883 F.2d 125 (D.C. Cir. 1989).*

Although the parties argued to the Court of Appeals the denial of the motion to compel, that Court discussed, but did not decide, the issue. It suggested that this Court consider the issue further, observing:

[T]he trial court might want to reconsider its decision not to compel the production of the statements made by non-employee witnesses to WMATA investigators at the scene. Only defendants and the police, not plaintiffs, had representatives at the [*3] scene of the accident. Moreover, while plaintiffs had legal access to the names of witnesses questioned by police, not all the witnesses questioned by WMATA were questioned by the police and WMATA refused to turn over even its witness list to plaintiffs until ordered to by the court one and one-half years later. These statements may contain additional information on the time and distance question, or others in the case such as the demeanor of the train operator. Such contemporaneous statements cannot be replicated by subsequent discovery.

*Id. at 132.*

On reflection, this Court is persuaded that in the circumstances here defendant is obligated to produce the non-employee witness statements previously withheld. To bar discovery under the work product doctrine, [1] WMATA must show that the statements were "prepared in anticipation of litigation." *Fed. R. Civ. Proc. 26(b)(3).* Plaintiffs must also be unable to demonstrate, first, a "substantial need" for the documents and, second, that

1990 U.S. Dist. LEXIS 9471, *

they could not procure equivalent evidence without "undue hardship." *Id.*

> 1  That doctrine was codified in 1970 and reads in pertinent part:

>> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

> *Fed. R. Civ. Proc. 26(b)(3).*

[*4]  WMATA fails to prove the documents sought were prepared in anticipation of litigation. According to the Advisory Committee's comments, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this doctrine." *Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 501 (1970).* In this case, there is no evidence WMATA paid specific attention to prospective litigation. WMATA routinely investigates "[f]atalities and personal injuries that may or may not be a direct result of train, bus or facility related accidents/incidents." *See* Defendant's Exhibit 2, "Washington Metropolitan Area Transit Authority Office of Safety and Fire Protection," at 2. Although there is some dispute as to whether the regulations exclude suicides from such investigations, plaintiffs have presented unrebutted testimony from WMATA's manager of safety and fire protection that such investigations are routinely made in connection with suicides. *See* Deposition of Robert W. Wood, Jr. at 9-10, 16.

WMATA's claim that it is routinely [*5] sued and always acts with that possibility in mind does not affect the fact that the witness statements were collected in the ordinary course of business. In spite of similar claims, routine accident reports by railroads are discoverable. *See, e.g., Rakus v. Erie-Lackawanna R. Co., 76 F.R.D. 145 (W.D.N.Y. 1977).* The underlying principle was cogently stated by this Court: "The mere contingency that litigation may result is not determinative." *Janicker v. George Washington University, 94 F.R.D. 648, 650 (D.D.C. 1982); see also Sham v. Hyannis Heritage Hotel,*

*Inc., 118 F.R.D. 24 (D. Mass. 1987).* Absent a showing that its investigations were made primarily for the purposes of future litigation, WMATA's conclusory assertions cannot protect the witness statements from discovery.

Furthermore, the Court of Appeals hinted, and the developing record confirms, that, even if the statements were work product prepared in anticipation of litigation, the witness statements would nonetheless be producible. Plaintiffs have shown substantial need for the statements in question. Courts have often noted that contemporaneous statements are "unique and can never be duplicated precisely." *Gillman* [*6] *v. United States, 53 F.R.D. 316, 319 (S.D.N.Y. 1971)* (citation omitted); *see also McDougall v. Dunn, 468 F.2d 468, 472 - 76 (4th Cir. 1972).*

[S]tatements taken from the witnesses shortly after the accident constitute 'unique catalysts in the search for truth' . . . in that they provide an immediate impression of the facts that cannot be recreated or duplicated by a deposition that relies upon memory, and many courts have held that the mere lapse of time in itself is enough to justify production of the statements.

*Southern Ry. Co. v. Lanham, 403 F.2d 119, 128 (5th Cir. 1968)* (citations omitted). This widespread judicial "notion that memory fades with the passage of time is amply supported by psychological studies, as well as by common sense." C. Wright & A. Miller, 8 *Federal Practice and Procedure* § 2205, at 223 & n. 86 (1970) (citations omitted).

Plaintiffs have also shown undue hardship. It has now been four years since the accident occurred. The difficulty, indeed impossibility, plaintiffs would encounter in reconstructing the contemporaneous impressions of the witnesses is manifest. WMATA contends, however, that plaintiffs had the opportunity to collect such impressions. [*7] The Court of Appeals suggested this contention is fanciful because WMATA refused to turn over the names of many witnesses for a year and one-half. *See Johnson v. Washington Metro. Area Transit Auth., 883 F.2d at 132.* Moreover, even if plaintiffs had been in possession of the witness list soon after the accident, without the investigative resources of a public agency it would have taken plaintiffs weeks to track down and depose the witnesses. By that time much of the testimony would have lost its freshness and usefulness. Scientific "authorities indicate that the sharpest drop in a witness' ability to recall a scene or an event occurs shortly after he witnesses it -- certainly within a day or two," *Hamilton v. Canal Barge Co. Inc., 395 F. Supp. 975, 977 ( E.D.La. 1974)* (citations

Kathleen Carey v. Johnson and ... v. wm.wpd    Page 4

omitted). Given the suddenness of the events at issue and the difficulty witnesses have had in reconstructing the events, a lapse of even several weeks, and the concomitant deterioration in recall, would have been damaging in this case. Thus, even under WMATA's demanding standard, plaintiffs would have been unable to secure the "substantial equivalent" of the evidence gathered by the WMATA detectives.

[*8]  In summary, WMATA's invocation of the work product fails on two grounds. First, WMATA has not shown the statements collected by WMATA investigators immediately after the accident were made in anticipation of litigation. Second, plaintiffs have demonstrated both the substantial need and the undue hardship necessary for discovery of work product.

Accordingly, it is this *26th* day of July, 1990, hereby

ORDERED: that plaintiffs' motion should be, and is hereby, granted; and it is further

ORDERED: that counsel for the parties shall attend a status conference to resolve what documents are to be discovered on August 3, 1990 at 9:30 a.m.