IN THE
UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Jane Washburn Robinson,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | Civil Action No. 1:07-cv-1072 (PLF-DAR) |
| **The Washington Metropolitan Area** ) | |
| **Transit Authority,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

WMATA's Opposition to Plaintiff's Motion to Compel ("Opposition") is replete with irrelevant and inaccurate arguments that fail to justify WMATA's refusal to produce a single document in response to Plaintiff's written discovery. The Court should reject WMATA's arguments and order WMATA to respond to Plaintiff's discovery.

**ARGUMENT**

**1.      Witness Statements (Request No. 1, Interrogatory No. 2).**

The Opposition fails to distinguish *Johnson v. Washington Metropolitan Area Transit Authority*, 1990 WL 113877 (D.D.C. 1990). First, the Opposition makes the strained argument that "recordings of telephone interviews" of witnesses are not "witness statements." Opp. at 2-3. But that is exactly what they are. As in *Johnson*, a WMATA investigator interviewed eyewitnesses after the accident and recorded their statements. WMATA apparently takes the position that the recorded statements are not "witness statements" because they were not *signed* by the witnesses, but nothing in *Johnson* indicates that the witness statements were signed in that case or that they must be signed. There is no indication in the *Johnson* opinion that the

1

statements were tape recorded, as here, but that only adds to their value as reliable evidence. Thus, the Court should reject WMATA's argument that its tape recorded interviews of witnesses are not "witness statements."

Second, WMATA fails to meet its burden of "showing that its investigations were made *primarily* for the purposes of future litigation." *Johnson*, at *5 (emphasis added). The Opposition concedes that WMATA's investigation of the accident was a "standard procedure" performed, in part, for "a safety assessment or for other purposes within WMATA." Opp. at 3. Yet it contends that the witness statements are work product because the investigation was "automatically" forwarded to a claims adjuster "because the likelihood of a claim being made is very high." Opp. at 4. But the Court in *Johnson* specifically rejected WMATA's argument, explaining that "WMATA's claim that it is routinely sued and always acts with that possibility in mind does not affect the fact that the witness statements were collected in the ordinary course of business." *Johnson*, at *4-*5. Thus, as in *Johnson,* WMATA has failed to establish that its routine interviews of witnesses after the accident is protected work product.

Third, even if WMATA had established that the witness statements were work product (it has not), it has failed to rebut Plaintiff's showing that there is a substantial need and undue hardship necessary for their production. Instead, WMATA attempts to engage in a sleight of hand. WMATA argues that there is no need to produce the witness statements because its counsel reached ***Ms. Williams*** by calling her at home. Opp. at 5. ***But Plaintiff is not seeking to compel any witness statement by Ms. Williams*** because she is not one of the three witnesses whose statements WMATA is withholding: Ms. Alzita Welles, Ms. Lydia Gumbs, and Kevin McIlwaine. *See* Opp. at 2 (quoting WMATA's response to Interrogatory No. 2).[1] Thus,

---

[1] WMATA has not identified that it possesses any statement by Ms. Williams.

2

WMATA's claim that she has reached Ms. Williams is a red herring that has nothing to do with Plaintiff's motion.[2]

The Opposition notably does *not* claim that WMATA counsel has been able to reach the witnesses whose statements *are* the subject of Plaintiff's motion. Although the Opposition states that WMATA counsel "left a message requesting a call back" from Ms. Welles, it does not say that Ms. Welles ever returned the call. Opp. at 5. Counsel for Plaintiff also has called Ms. Welles and has not received a return call. Similarly, the Opposition gives an address (with no telephone number) for Ms. Gumbs, but does not state that WMATA has contacted her there (or even attempted to do so). *Id.* at 6. Plaintiff's counsel has attempted to visit Ms. Gumbs at her home address, but has been unsuccessful. And WMATA does not even mention Mr. McIlwaine (the bus driver) or claim that he is willing to speak with counsel for Plaintiff.

Finally, the Opposition attempts to make trivial distinctions between this case and *Johnson* that do not impact the reasoning of the opinion. The Opposition claims that the statements here were taken nine days after the accident – on September 25, 2006 – rather than "within one or two days of the incident, as they apparently were in *Johnson*." Opp. at 4. Whether they were taken one, two, or nine days after the accident, the witness statements are much more reliable than a statement obtained today, over two years after the accident. Similarly, the Opposition argues that it provided the names of the witnesses in August 2007 – two years after the accident – rather than "four (4) years after the accident, as was the case in *Johnson*," yet fails to explain how a two vs. four year delay makes any difference in the analysis. Opp. at 4. The witnesses memories today are still stale compared to the recorded witness interviews after

---

[2] The Opposition also mentions a telephone number for Job Randolph, another witness not at issue in this motion, yet does not state that WMATA has been able to contact him.

3

the accident. Thus, although the Court need not reach the issue because WMATA has failed to meet the threshold requirement – that the witness statements are work product – Plaintiff has shown the substantial need and undue hardship necessary to require production of the witness statements.

> 2. **Information Relating to the Bus Driver (Request No. 2, Interrogatories Nos. 4, 5, and 6).**

The Opposition offers a scattershot of reasons for refusing to produce information about the bus driver, WMATA's primary witness, none of which have merit.

First, the Opposition's absurd example of impeaching the bus driver on his high school transcript attacks a straw man and fails to address Plaintiff's actual argument. Plaintiff explained in her motion that she is seeking information about the bus driver because it contains information about his safety record and other issues directly relevant to this case. Indeed, the impeachment example in Plaintiff's motion involved a scenario where the bus driver made statements about his driving record, not impeachment on a collateral issue such as his high school grades. Information about the bus driver is critical evidence in the case, and WMATA has failed to offer any valid reason why it should not produce this information.

Second, WMATA's claim that the bus driver's employment file calls for "expert opinion evidence" under Rule 26 (b)(4)(B) is makeweight. Rule 26(b)(4)(B) prohibits the discovery of facts and opinions of a party's consulting experts – i.e., "an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Plaintiff's request for the bus driver's personnel file seeks disciplinary actions and other information from WMATA officials, not its consulting experts retained for this case.

Third, WMATA's remarkable position that its own policies and procedures allow it to shirk its discovery obligations has no basis in the law. As an initial matter, WMATA offers no valid legal authority for its claim that its own policies and procedures have the "force of law." Opp. at 9. But even if that were true, WMATA concedes that its policies allow it to produce documents pursuant to a "court order." Opp. at 10. A court order is exactly what Plaintiff is seeking in her motion to compel. Thus, WMATA's argument will become moot if the Court orders it to comply with Plaintiff's discovery.

Moreover, the Opposition does not even attempt to respond to the cases cited by Plaintiff in which Courts have held that a government agency cannot avoid discovery through its own policies and procedures. Pl. Mem. Supp. Mot. Compel at 5. Notwithstanding WMATA's status as a "tri-jurisdictional entity," Opp. at 9, it is not immune from the Federal Rules of Civil Procedure and must respond to discovery when one of its bus drivers negligently strikes a pedestrian.

### 3. Documents Relating to the Previous WMATA Accidents at the Intersection (Request No. 3; Interrogatory No. 7).

First, the Opposition is flat wrong when it says that "[w]hile the Plaintiff now explains that she is interested in this data as it applies to WMATA vehicles, the request as phrased goes far beyond that more limited request." Opp. at 11. Plaintiff's Interrogatories and Document Requests clearly define the terms Traffic Violations and Pedestrian Incidents as involving *only WMATA vehicles*:

> "Traffic Violation" shall refer to any event in which a bus or other vehicle *operated by WMATA* was alleged by any person to have violated a traffic law or ordinance, including but not limited to events that resulted in citations or warnings by any governmental authority.
>
> "Pedestrian Incident" shall refer to any event in which any person alleged that a bus or other vehicle *operated by WMATA* struck a

5

pedestrian.[3]

Plaintiff's counsel corrected WMATA's failure to read the definitions during the meet and confer session, yet it has made the same mistake again.

Second, WMATA's claim that Plaintiff's requests could "theoretically" include other non-revenue vehicles is yet another attempt to distract from the real issues in this motion. Opp. at 11. WMATA has refused to produce *any* responsive documents regarding Metrobuses, let alone non-revenue vehicles. To remove this excuse for WMATA's failure to provide discovery, Plaintiff will limit her request to Metrobuses and other revenue vehicles and incidents within the last ten years.[4]

### 4. Information Regarding Other Traffic Control Signal Violations and Pedestrian Incidents (Requests Nos. 4 and 5; Interrogatories Nos. 8 and 9).

First, the Opposition's claim that Plaintiff's Requests Nos. 4 and 5 and Interrogatories Nos. 8 and 9 "on their face are not limited" to WMATA vehicles, Opp. at 13, once again fails to consider the definitions of Traffic Control Signal Violations and Pedestrian Incidents, which are expressly limited to incidents involving WMATA vehicles.[5] And the Opposition inexplicably argues that Requests Nos. 4 and 5 and Interrogatories Nos. 8 and 9 contain "no time limitations" when they clearly seek information "after January 1, 2000." It is difficult to take WMATA's position seriously when it fails to read the plain language of Plaintiff's interrogatories and requests.

---

[3] Pl. Mot. Compel, Exhibits 1 and 2.

[4] WMATA's recalcitrance in discovery is evident by the Opposition's statement that "counsel is able to provide" additional information. Opp. at 11-12. If WMATA is "able to provide" this information, it should do so, for its responses are several months overdue.

[5] Pl. Mot. Compel, Exhibits 1 and 2.

Second, the Opposition's claim that it "is not required to re-work the data to conform to the Plaintiff's request" is another smoke screen designed to avoid responding to Plaintiff's discovery. Opp. at 13. Surely WMATA has information on incidents in which its buses have been charged with violating traffic signals or striking pedestrians. That is the information that Plaintiff is seeking. The fact remains that WMATA has refused to provide *any* documents in response to Plaintiff's written discovery. The Court should order it to produce this information.

5. **Documents Relating to Training of WMATA Employees (Requests Nos. 6 and 7; Interrogatories Nos. 10-11).**

The Opposition recites the undisputed fact that Plaintiff has not brought a negligent hiring, training, and supervision claim against WMATA. But that does not mean that she cannot obtain *discovery* on information relating to the bus driver's training. As explained in Plaintiff's Motion to Compel, this information bears directly on whether the bus driver was negligent, the key issue in the case.

6. **Documents Relating to WMATA's Actions Taken in Response to Traffic Control Signal Violations or Pedestrian Incidents (Request No. 8).**

WMATA attempts to complicate a straightforward document request by claiming confusion as to what information is sought.[6] Put simply, the request seeks documents regarding any changes that WMATA has made in response to Traffic Control Signal Violations and Pedestrian Incidents, including changes in driver training, heightened safety awareness programs, or other responses that would indicate WMATA's awareness of these problems and how it responded. WMATA's parade of horribles about what would be required for it to comply

---

[6] WMATA has apparently abandoned its primary objection – that the information seeks evidence of a subsequent remedial measure.

7

with the request is another attempt to distract from Plaintiff's routine document request seeking directly relevant evidence.

## CONCLUSION

For the foregoing reasons and those stated previously, Plaintiff requests that the Court grant its Motion to Compel Discovery.

    Respectfully submitted,

/s/ Richmond T. Moore
F. Lane Heard III (D.C. Bar No. 291724)
Richmond T. Moore (D.C. Bar No. 483811)

Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC  20005
(202) 434-5000

*Attorneys for Plaintiff Jane Washburn Robinson*

Dated:  February 22, 2008

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 22nd day of February 2008 a true and correct copy of the foregoing Reply in Support of Plaintiff's Motion to Compel Discovery was served on the defendant through the Court's ECF system.

David J. Shaffer
Kathleen Ann Carey
WASHINGTON METROPOLITAN TRANSIT AUTHORITY
600 Sixth Street, NW
Washington, DC 20001
dshaffer@wmata.com
kcarey@wmata.com

                                                    /s/  Richmond T. Moore
                                                  Richmond T. Moore

                                                  WILLIAMS & CONNOLLY LLP
                                                  725 12th Street, NW
                                                  Washington, DC 20005-5901
                                                  (202) 434-5000
                                                  *rtmoore@wc.com*