## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE WASHBURN ROBINSON, )<br><br>Plaintiff, )<br><br>v. )<br><br>WASHINGTON METROPOLITAN )<br> AREA TRANSIT AUTHORITY, )<br><br>Defendant. ) | Case No. 07 CV 01072 (PLF) |

## DEFENDANT WMATA'S OBJECTIONS TO
## MAGISTRATE JUDGE'S RULING ON
## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

### Introduction

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), pursuant to Fed. R. Civ. P. 72(a), hereby files its Objections to certain aspects of Magistrate Judge Robinson's March 6, 2008 oral ruling[1] on Plaintiff's Motion to Compel Discovery. At the conclusion of the March 6, 2008 hearing on the Motion to Compel, Judge Robinson ordered WMATA to produce by March 28, 2008: (1) the recorded statements taken by WMATA's claims representative of interviews of the WMATA bus operator, eyewitness Alzire Welles, and eyewitness Lydia Gumbs; (2) work performance-related documents from the bus operator's personnel file for the entire length of his employment with WMATA; (3) information regarding previous accidents involving WMATA vehicles at the intersection in issue; and (4) training

---

[1] No written order was issued on the Motion to Compel. If the Court desires, WMATA will order a copy of the transcript of the March 6, 2008 hearing and provide a copy to the Court.

records and materials regarding the bus operator.

Immediately after the hearing, with respect to category (1), WMATA provided counsel for Plaintiff with a copy of the eyewitness statements from Ms. Welles and Ms. Gumbs.   Moreover, WMATA has retrieved training records and materials related to the bus operator.  For the reasons set forth below, WMATA respectfully requests that the Court overturn the Magistrate Judge's ruling in the following respects:

(1)    The recorded statement by the bus operator to the claims representative is privileged based on work product of counsel and the claims office attorney-client privilege, and was otherwise prepared in anticipation of litigation.

(2)    Work performance related documents in the bus operator's personnel file for incidents unrelated to the accident in issue have absolutely no relevance to the instant case and are contrary to the holding of the D.C. Circuit in Burkhart v. WMATA, 112 F.3d 1207 (D.C. Cir. 1997) that WMATA is immune from claims of negligent hiring, retention, and supervision.  Such documents can also be distinguished between those created before the accident in question and those created after the accident in question.  Even if there is any relevance to pre-accident documents, there is clearly no relevance to post-accident documents unrelated to the accident.  Events in the employee's work life after an accident can have no impact on the employee's behavior at the time of the accident.  However, each category of information is neither admissible at trial nor reasonably calculated to lead to admissible evidence.  Moreover, WMATA's self-evaluative privilege protects any documents related to post-accident analysis or discipline.

2

(3)    Information regarding previous accidents involving WMATA vehicles at the intersection in issue likewise has no relevance to the instant case.

## Statement of Facts

Plaintiff alleges in this action that she was injured on September 16, 2005 as she was beginning to cross the street at the intersection of Massachusetts Avenue and Belmont Street, N.W., in Washington, D.C.  (Complaint, ¶ 1).  She alleges that a Metrobus struck her right arm as she stepped off the curb.  (Id., ¶ 10).  She further alleges that the pedestrian traffic control signal had just changed to "Walk" before she stepped off the curb.   (Id., ¶'s 10 and 12).  WMATA contends that the bus had a green light for its direction of travel as it entered the intersection and that Plaintiff stepped off the curb without looking.  Despite diligent efforts taken by the bus operator to avoid Plaintiff, Plaintiff's arm came into contact with the bus.

## ARGUMENT

I.    Plaintiff Is Not Entitled To Discover The Recorded Statement
Which The Bus Operator Gave To WMATA's Claims Representative
Because It Is Protected By Attorney-Client Privilege, Work Product,
And Privilege For Information Received In Anticipation Of Litigation.

With respect to witness statements, the only remaining issue is whether WMATA should be required to turn over a recorded statement from the bus operator taken by WMATA's internal claims representative.  This statement was recorded on or about November 9, 2005, almost two months after the September 16, 2005 incident in issue.  The Magistrate Judge erred in ordering production of this statement because it constitutes work product.  In addition, under the circumstances present,

this statement is also protected based on attorney-client privilege and privilege for information gathered in anticipation of litigation.

The role of the claims representative is uniquely intertwined with the gathering of information related to future claims and litigation. The claims representative's task thus serves an important role in assisting the attorneys who defend WMATA's interest in court. As Magistrate Judge Dwyer of this Court stated in denying documents prepared by the claims office in Lucy v. WMATA, Civil No. 87-2630 (D.D.C. 1988) (Order at 5-6) (Exhibit A):

> The purpose of WMATA's Office of Risk Management ("Risk") is to identify and evaluate the risk of loss to which WMATA's assets are exposed. As part of the process of maintaining files, "it investigates, evaluates and negotiates tort claims and provides risk analysis and funding requirements for claims against WMATA." [Citation omitted.] If the claim against WMATA is not resolved, the "Risk" files are forwarded to counsel in preparation for litigation. Id.
> The Court finds that these documents were prepared in anticipation of litigation and are, therefore, not discoverable absent a showing of substantial need and undue hardship in obtaining an alternative source of the material. Hickman v. Taylor, 329 U.S. 495, 511 (1947).

Magistrate Judge Dwyer's holding in Lucy is precisely on point in the instant case. Plaintiff's prior reliance on Johnson v. WMATA, 1990 U.S. Dist LEXIS 9471 (D.D.C. 1990) is misplaced, and is inconsistent with the well-reasoned decision by Magistrate Judge Dwyer in Lucy. The Lucy case correctly highlights the fact that the work performed by WMATA's claims representatives is for purposes of future litigation. Moreover, the Johnson decision was focused on "non-employee witness

statements," not on the bus operator's statement in the instant case.  Clearly, if a governmental entity like WMATA cannot speak to its own employees about an accident, without fear of production of such statements in discovery, this will have a chilling effect on the entity's ability to determine its position with respect to the litigation and to defend the public fisc.  Moreover, it will chill suggestions for safety improvements in the future. Upon information and belief, the bus operator is available for deposition by counsel for Plaintiff.

In addition, the statement by the bus operator to the claims representative is also protected by the attorney-client privilege.  As Magistrate Judge Dwyer's decision in  Lucy makes clear, WMATA's claims representatives are acting for the benefit of WMATA's attorneys.  Thus, the communications between the claims representative and the WMATA bus operator is in reality an attorney-client privileged communication, just as communications between a WMATA paralegal and the bus operator would be. Alternatively, the tape is protected as material generated in anticipation of litigation.

II.    Plaintiff Is Not Entitled To Work Performance-Related Documents From
       The Bus  Operator's Personnel File For Incidents Unrelated To The Incident
       In Issue Or For Material Protected By WMATA's Self-Evaluative Privilege.

A.    Documents Unrelated To Incident In Issue.

Plaintiff requested an extremely broad range of documents pertaining to the bus operator, such as in Request No. 2 "[a]ll documents relating to the Bus Driver," including driving record, training, supervision, health-insurance claims, sickness records, etc.  Without regard to any time limitations, the Magistrate Judge ordered production of all documents related to work performance.  This ruling requires WMATA

to produce all performance-related documents even if they have no relevance whatsoever to the incident in issue.

Information related to other incidents or circumstances has absolutely no relevance to the instant case. Specifically, such evidence would not be admissible, and could not lead to the discovery of admissible evidence. In Burkhart v. WMATA, 112 F.3d 1207, 1217 (D.C. Cir. 1997), the D.C. Circuit held that WMATA was immune from claims related to the hiring, training, and supervision of WMATA employees, stating:

> As a result, we conclude that the hiring, training, and supervision of WMATA personnel are governmental functions. WMATA is therefore immune from suit for negligence in the performance of such functions.

Burkhart conclusively forecloses an argument by Plaintiff that such information unrelated to the accident in issue could be relied upon to argue that WMATA should have trained or supervised the bus operator differently. Moreover, Plaintiff cannot seek to couch its request for such documents to support a negligent training or supervision argument under the guise of calling it something else. See, e.g., Sabir v. District of Columbia 755 A.2d 449, 452 (D.C. 2000) ("a plaintiff cannot seek to recover by 'dressing up the substance' of a claim, here assault, in the 'garments' of another, here negligence"). Consequently, any request by Plaintiff for documents unrelated to the incident at issue should be rejected.

6

B.    Documents Protected By WMATA's Self-Evaluative Privilege.

The Magistrate Judge's ruling also incorrectly requires WMATA to produce documents which, although related to the incident in issue, are nonetheless protected by WMATA's self-evaluative privilege.   These documents include records related to any internal discipline.[2]

Documents associated with WMATA's self-evaluation/self-analysis following an accident should be accorded protection under a public policy which encourages such post-accident evaluations for the purpose of considering remedial discipline and fostering safe operation of WMATA buses.   Requiring WMATA to produce the mental impressions and opinions of any  WMATA supervisor who evaluated this accident and made the decision on whether or not to discipline the bus operator would chill and deter future evaluations aimed at improving WMATA's safe operation of its buses. The D.C. Circuit has recognized the existence of the self-evaluative privilege in areas such as public health or (as present here) public safety.   First Eastern Corp. v. Mainwaring, 21 F.3d 465, 466-67 n.1 (D.C. Cir. 1994) (citing Bradley v. Monroe Co., 141 F.R.D. 1, 2-3 (D.D.C. 1992)).  In Sutton v. WMATA, No. 07-1197 (D.D.C. 2007) (Attachment B), Judge Bates recognized WMATA's self-evaluative privilege under very similar circumstances, holding that WMATA was entitled to redact opinions or conclusions (as opposed to merely factual information) in the division accident report form.    Other judges interpreting discovery rules have denied or strictly limited

---

[2] WMATA produced, as part of its initial disclosures in this case, the bus operator's Motor Vehicle Accident Report; the Street Supervisor's Accident Report; and pictures taken at the scene; the bus operator's answers to "Supplemental Questions".

discovery based purely on public policy considerations of protecting such self-evaluative processes, opinions and conclusions. See Gilbert v. WMATA, Civil Action No. 85-535 (D.D.C., Oct 9, 1986) (Revercomb, J.) (safety evaluations of rail station) (Attachment C); Whisenton v. WMATA, Civil Action No. 88-2637, slip op. at 3 (D.D.C. Dec. 22, 1988) (Gessell, J.) (bus operator evaluations) (Attachment D); Laws v. Georgetown Univ. Hosp., 656 F. Supp. 824, 826 (D.D.C. 1987); and Bredice v. Doctor's Hosp., 50 F.R.D 249, 250-51 (D.D.C. 1970) (hospital staff committees charged with reviewing clinical work at hospital); O'Connor v. Chrysler Corp., 86 F.R.D. 211, 216-18 (D. Ma. 1980) and Penk v. Oregon State Bd. of Higher Education, 99 F.R.D. 506 (D. Or. 1982) (reports of affirmative action programs prepared to comply with federal employment opportunity laws).

In Granger v. National Railroad Passenger Corp., 116 F.R.D. 507 (E.D. Pa. 1987), the district court applied the self-evaluative privilege and prevented the plaintiff from discovering opinions and conclusions regarding an accident that Amtrak investigated. Plaintiff had sought to compel Defendant Amtrak to produce documents without redactions under portions with headings, "Accident Analysis," "Cause," "Contributing Factors" and "Committee Recommendations." Amtrak asserted that the self-critical analysis doctrine protected production of these redacted sections. The district court discussed the policies underlying this privilege or doctrine, noting that it is based on "the need to promote candid and forthright self-evaluation." Granger, 116 F.R.D. at 509. The court then protected from discovery the portions of the documents which clearly encompassed opinions and recommendations, i.e., Accident Analysis

8

and Committee Recommendations, finding that the production of these portions "would tend to hamper honest, candid self-evaluation." Granger, 116 F.R.D at 510.

In Martin v. Potomac Electric Power Co., 1990 WL 158787, at 2 (D.D.C. 1990), the district court stated that the privilege recognized in Bredice had continuing vitality in cases involving public health and safety, even though it declined to apply the privilege under the particular facts of that case (a Title VII claim). It stated, "It is critical that efforts to understand and correct dangerous conditions are not blocked because companies fear that evidence gathered as part of the corrective process will later be used against them." 1990 WL 158787 at 1.

District of Columbia law is similar and accepts that public policy considerations justify protecting from discovery the analyses, opinions, and conclusions drawn by scientific researchers from their data. See Plough Inc. v. Nat'l Academy of Sciences, 530 A.2d 1152, 1157 (D.C. 1987), citing Ross v. Bolton, 106 F.R.D. 22, 24 (S.D.N.Y. 1985) (material representing staff analyses of data in quasi-governmental agencies investigation into illegal securities trading protected from discovery; defendant permitted discovery of factual data, but not staff analyses of data).

For these important policy reasons, WMATA should not be required to produce documents relating to post-accident evaluations of the accident or any disciplinary action taken regarding the bus operator. WMATA should not be required to provide costly and time-consuming discovery on such sensitive, privileged matters.

9

III.    Plaintiff Is Not Entitled To Discover Information Regarding
        Any Previous Accidents Involving WMATA Vehicles At The
        Intersection In Issue Because This Information Is Totally Irrelevant.

The Magistrate Judge ordered WMATA to produce information regarding other accidents from January 1, 1999 to September 16, 2005 (the date of the accident in issue) which occurred at the subject intersection and involved a WMATA vehicle. As noted in the preceding section, under Burkhart v. WMATA, supra, WMATA is immune from claims regarding negligent hiring, training, and supervision. There is absolutely no correlation between any prior accidents involving WMATA vehicles at the same intersection and the instant case. The issues unique to this case are whether the bus operator was negligent on September 16, 2005, when Plaintiff stepped into the path of the moving bus and her arm came into contact with the bus, and whether Plaintiff was contributorily negligent. There is no issue regarding notice of a defective condition, which might render previous incidents relevant such as in a premises liability case. Moreover, in reviewing such records, counsel, as an officer of this Court, represents that this accident involving Ms. Robinson is the only pedestrian/WMATA accident from January 1, 1999 through September 16, 2005 at the intersection of Massachusetts Avenue and Belmont Street.

Therefore, these documents are neither relevant to any claim or defense in this litigation nor will they lead to any relevant information. WMATA should not be compelled to produce them.

## CONCLUSION

For the foregoing reasons, WMATA respectfully requests that these Objections be sustained and that the Magistrate Judge's ruling be modified as in the accompanying proposed Order.

Respectfully submitted,

_____/s/_____
Kathleen A. Carey #357990
Assistant General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1496
Kcarey@wmata.com

_____/s/_____
David J. Shaffer #413484
Assistant General Counsel
600 Fifth St., N.W.
Washington, D.C. 20001
(202) 962-2820
Dshaffer@wmata.com
Attorneys for Defendant WMATA

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant WMATA's Objections to Magistrate Judge's Ruling on Plaintiff's Motion to Compel Discovery was served through the Court efiling this 20th day of March, 2008 to:

F. Lane Heard III
Richmond T. Moore
Williams & Connolly LLP
725 12th Street, N.W.
Washington, D.C.  20005

_____/s/_____
Kathleen A. Carey

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE WASHBURN ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. 07 CV 01072 (PLF) |
| | ) |
| WASHINGTON METROPOLITAN | ) |
|  AREA TRANSIT AUTHORITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER**

Upon consideration of Defendant WMATA's Objections to Magistrate Judge's Ruling on Plaintiff's Motion to Compel Discovery, and good cause having been shown, it is by the Court this _____ day of _____, 2008:

ORDERED, that the Objections are sustained and the Magistrate Judge's ruling is modified so that WMATA does not have to produce the following categories of documents:

1. The Bus Operator's recorded statement to the claims representative.

2. Work performance-related documents regarding the bus operator which are unrelated to the accident in issue.

3. Information regarding previous accidents regarding WMATA vehicles at the intersection in question.


_____
                                                               _____
                                                                     United States District Judge

Copies electronically to:

Kathleen A. Carey
David J. Shaffer
F. Lane Heard III
Richmond T. Moore

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Estate of Alice M. Lucy By          )
Sandra R. Lucy, Personal Re-        )
presentative                        )
                 Plaintiffs,        )
                                    )
         v.                         )        Civil Action No. 87-2630
                                    )
Washington Metropolitan Area        )
  Transit Authority                 )
                                    )
             Defendant and Third    )
             Plaintiff              )                **FILED**
                                    )
         v.                         )          APR 25 1988
                                    )
Granite Construction Company, Inc.  )        Clerk, U. S. District Court
  et al.,                           )          District of Columbia
                                    )
             Third-Party Defendant  )

· **ORDER**

The parties were before the Court on April 14, 1988, for an oral hearing on third-party defendant S.J. Groves & Sons Company's ("Groves") motion to compel discovery from defendant/third party plaintiff Washington Metropolitan Area Transit Authority ("WMATA") and WMATA's motion for protective order to prevent Groves or any other party from deposing Kenneth Cobb. For the reasons stated below, Groves's motion to compel is granted to the extent that all factual matters presented to the Safety Committee are held to be discoverable. Additionally, Groves may receive deposition testimony from Mr. Dowling concerning his observations of the handhole at the Addison Road Metro and handholes at other Metro locations as well as testimony concerning subsequent remedial changes. WMATA's motion for

protective order is granted to the extent that Mr. Cobb may not be questioned nor may he produce any documents that reflect any nonfactual matters related to his investigation.

## I. MOTION TO COMPEL

Groves filed a motion to compel production of certain documents and to compel deponent Talbert Dowling to respond to all questions posed during a deposition. In response WMATA claimed several privileges including attorney-client, work product, governmental deliberation and self-evaluation. Additionally, WMATA contended that the documents and testimony were withheld on the ground that they contain information about subsequent remedial measures.

The documents for which WMATA has claimed the above privileges fall into two classes: 1) documents generated by the Office of Risk Management ("Risk"); and 2) documents generated by WMATA's Safety Committee.

### a. Safety Committee Files

As a result of the June 4, 1987 accident, WMATA formed a special Safety Committee to commence an investigation to determine the cause of the accident and, if necessary, to recommend changes to WMATA to prevent such incidents in the future. WMATA now argues that to release the documents reflecting the deliberations of the Safety Committee would impede future investigations by deterring frank discussions and critical self

2

evaluations by WMATA's employees. This Court agrees with WMATA's assertion of the self-evaluative privilege, but does not find merit in any other defense proffered by WMATA.

Federal courts interpreting the discovery rules frequently have denied or limited discovery absent claims of formal privilege, based purely upon reasons of public policy. 4 J. Moore, Moore's Federal Practice, ] 26.60 [3] (2d ed. 1986). Specifically, there is a line of cases that has extended a "qualified privilege" to protect the deliberations of internal institutional bodies like WMATA's Safety Committee whose function is to review and criticize the quality of the institution's work. For example, such a qualified privilege has been extended to hospital staff committees charged with reviewing the clinical work done at the hospital. Laws v. Georgetown Univ. Hospital, 656 F. Supp. 824, 826 (D.D.C. 1987); Bredice v. Doctor's Hospital, 50 F.R.D. 249, 250-51 (D.D.C. 1970). Similarly, the privilege has been extended to protect reports on affirmative action programs prepared to comply with federal equal employment opportunity laws. See, e.g., O'Connor v. Chrysler Corp., 86 F.R.D. 211, 216-18 (D. Ma. 1980); Penk v. Oregon State Bd. of Higher Education, 99 F.R.D. 506, 50⁻ D.Or. 1982).[1]

---

[1] Courts have shown a willingness to extend the qualified privilege accorded self-evaluative deliberations to other areas as well. See, e.g., Keyes v. Lenoir Rhyne College, 552 F.2d 57° (4th Cir.), cert. denied, 434 U.S. 904 (1977) (confidential faculty evaluation records); Lloyd v. Cessna Aircraft Co., 7·

The concern in these cases for candid and critical self-analysis supports confidentiality of the deliberations of the Safety Committee. However, the privilege will not extend to protect any factual or statistical information collected by the committee with regards to the condition of the handhole at the Addison Road Metro Station or handholes at any other metro location before and after the June 4, 1987 incident. See Davidson v. Light, 79 F.R.D. 137, 139 (D. Colo. 1978) (factual data relied upon by hospital peer group must be produced); Wright v. Patrolmen's Benevolent Ass'n, 72 F.R.D. 161 (S.D.N.Y. 1976) (bar association's investigation into transfer of judge held discoverable despite "self-evaluative function" privilege, since only factual information, not deliberations, sought); Plough v. National Academy of Sciences, 530 A.2d 1152, 1160 (D.C. App. 1987) (facts and statistical information underlying committee's study are not protected by qualified privilege).

### b. Mr. Dowling's Testimony

Mr. Dowling was a member of WMATA's Safety Committee and was present at the Addison Road Metro location on the day of the incident. At his deposition, WMATA objected and instructed Mr. Dowling not to respond to questions "concerning Mr. Dowling's

F.R.D. 518 (E.D. Tenn. 1977) (deliberations of manufacturer's confidential internal review of product quality). See also Plough v. National Academy of Sciences, 530 A.2d 1152 (D.C. App. 1987) (academy documents reflecting closed deliberations of committee concerning review of methodology of study).

observations of the handhole on June 4, 1987, the condition of handholes throughout the Metro System and subsequent changes made to all handholes." Groves' Motion to Compel at p. 22. WMATA's objections are based primarily on its claims that the questions posed during Mr. Dowling's deposition fall under the self-evaluative privilege and the evidentiary privilege for subsequent remedial measures.

As a member of the Safety Committee, Mr. Dowling may not testify to any matters concerning the private deliberations of the Committee. He will be instructed, however, to respond to all factual questions concerning his observations of the handholes at the Addison Road Metro and handholes at other Metro locations.

Mr. Dowling also may testify to subsequent remedial measures taken by WMATA. The evidentiary privilege extends to evidence proffered at trial only and does not prohibit the production of such evidence at the discovery stage of the proceedings. See Fed. R. of Evid. 407.

### c. The Risk Files

The purpose of WMATA's Office of Risk Management ("Risk") is to identify and evaluate the risk of loss to which WMATA's assets are exposed. As part of the process of maintaining files, "it investigates, evaluates and negotiates tort claims and provides risk analysis and funding requirements for claims against WMATA." WMATA's Corrected Opposition to Groves' Motion to

Compel at p. 10. If the claim against WMATA is not resolved, the "Risk" files are forwarded to counsel in preparation for litigation. Id.

The Court finds that these documents were prepared in anticipation of litigation and are, therefore, not discoverable absent a showing of substantial need and undue hardship in obtaining an alternative source of the material. Hickman v. Taylor, 329 U.S. 495, 511 (1947). Groves has failed to make such a showing at this stage since it is entitled to receive all factual documents collected by the Safety Committee. Therefore, the motion to compel documents from the Risk files is denied.

## II. WMATA's MOTION FOR PROTECTIVE ORDER

Kenneth Cobb was retained by the Safety Committee to investigate and prepare an evaluation of the June 4th incident. WMATA now seeks to prevent Groves or any other party from deposing Kenneth Cobb or obtaining any documents concerning the June 4th incident on the basis of work product or the self-evaluative privilege. While this Court does not find any merit to WMATA's argument that this is work product, it agrees that the self-evaluative privilege extends to Mr. Cobb's report.

As outlined above, the qualified privilege will protect Mr. Cobb's report or testimony to the extent that it reflects any evaluation or criticisms of WMATA's safety policies and conclusions as to the cause of the June 4th incident. However,

6

Groves is entitled to any factual material present in Mr. Cobb's report or to any statistical or factual material relied upon by Mr. Cobb to complete his report. Accordingly, WMATA's protective order will be granted in part and denied in part.

Accordingly, it is by the Court this 25th day of April 1988

ORDERED that Groves' motion to compel be and it is hereby granted to the extent that all factual matters presented to the Safety Committee are held to be discoverable and it is

FURTHER ORDERED that Groves may receive deposition testimony from Mr. Dowling concerning his observations of the handhole at the Addison Road Metro and handholes at other Metro locations as well as testimony concerning subsequent remedial changes done to the handholes and it is

FURTHER ORDERED that WMATA's motion for protective order granted to the extent that Mr. Cobb may not be questioned nor may he produce any documents that reflect any nonfactual matter related to his investigation.

JEAN F. DWYER
United States Magistrate

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GLADYS CLAUDETTE SUTTON,

Plaintiff,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,

Defendant.

Civil Action No.  07-1197 (JDB)

## MEMORANDUM AND ORDER

On December 11, 2007 this Court held a telephone conference with the parties in this

case to discuss an on-going dispute relating primarily to redacted portions of reports produced by

defendant in the process of discovery.  Following that discussion, the parties submitted

supplemental briefing on the disputed issue on December 13, 2007 and, the next day, defendant

submitted unredacted copies of the reports in question for *in camera* review.  For the reasons set

forth below, the Court will order defendant to produce to plaintiff unredacted versions of certain

portions of the reports.

## DISCUSSION

I.      **Self-Evaluative Privilege**

Defendant argues that it redacted the contested portions of the reports because (at least in

part) the information contained therein consisted of self-evaluation and self-analysis that "should

be accorded protection under public policy."  Def.'s Opp'n at 3.  In short, the self-evaluative

privilege protects information that "relates to mental impressions and conclusions" formed during

-1-

a self-critical analysis of the events in question. See Wright v. WMATA, 1989 U.S. Dist. LEXIS

4366 at *1 (D.D.C. April 19, 1989). Defendant cites several decisions involving WMATA from

this Court, as well as from D.C. Superior Court, that have applied the self-evaluative privilege

doctrine. See, e.g., id.; Estate of Lucy v. WMATA, No. 87-2630 slip op. (D.D.C. April 25,

1988); Gilbert v. WMATA, No. 85-535 slip op. (D.D.C. Oct. 9, 1986); Def.'s Opp'n Ex. D (citing

various D.C. Superior Court decisions); see also First Eastern Corp. v. Mainwaring, 21 F.3d 465,

466-67 (D.C. Cir. 1994) (recognizing the self-evaluative privilege but declining to apply it

because the argument was waived below). In essence, the policy rationale underlying the self-

evaluative privilege is that if WMATA is forced to disclose the substance of these internal

evaluations, it may be chilled from performing them in the first instance, thereby reducing overall

public transportation safety. The Court adopts those principles for purposes of this analysis.

Nevertheless, upon *in camera* review of the WMATA reports, the Court concludes that several of

the redacted portions of the documents do not contain information that falls within the scope of

the self-evaluative privilege.

To begin with, the Court first reviewed the "Accident Report Form" produced by

defendant. Defendant initially redacted information under the "Accident Record for the Past 365

Days" heading. The Court finds that the record of past accidents concerning the WMATA

employee -- the bus operator involved in the fatal accident at issue -- is factual information that

does not qualify as "mental impressions" or "conclusions" and should be produced. Thus,

defendant shall produce information in the "Date" and "Action Taken" columns within the

"Accident Record" heading. On the other hand, defendant may carefully redact information

contained under the columns between "Date" and "Action Taken," because the Court concludes

that such assessments regarding the accident constitute opinions or conclusions within the scope

of the self-evaluative privilege. Defendant also redacted information under the "Action Taken by

the Division Superintendent or Supervisor" heading on page one of the same form. Because the

information found in rows numbered "13" and "16" is self-evaluative material, assessing and

characterizing the accident, defendant may redact those two rows under this heading. Finally, in

the next portion of the "Accident Report Form," defendant redacted information on page three of

"defendant's exhibit 1," as paginated by plaintiff's supplemental briefing. See Pl.'s Mot. Ex. 1 at

3. The Court concludes that information on this page also constitutes self-evaluative material

concerning the proper characterization and assessment (in defendant's view) of the accident and

may thus be withheld and redacted.

Turning to the Department of System Safety and Risk Management's "Bus/Pedestrian

Fatality Interim Investigation" report issued on February 17, 2007 -- labeled as defendant's

exhibit 2 in plaintiff's briefing -- defendant withheld material found on page five of that

document (again, by plaintiff's pagination). The Court concludes that the brief entries under the

headings "Probable Cause" and "Conclusions" are not protected self-evaluative material because

they merely state facts: namely, that there were no determinations made on those points as of that

date. As such, that information is not protected and should be produced to plaintiff.

Finally, defendant provided the Court with an additional document that it had just

recently discovered that amounts to a final update on the findings and conclusions issued in the

February 17, 2007 interim investigation report. This report, dated April 4, 2007, contains some

information that qualifies as self-evaluative. Specifically, defendant may withhold the following

self-evaluative material: (1) under the "Probable Cause" heading, defendant may redact the entire

-3-

section; and (2) under the "Conclusions" heading, defendant may redact <u>only</u> the <u>second</u> bullet point (beginning with "BTRA"). With respect to the "Actions taken" and "Recommendations" headings on the next page, the Court concludes that the information listed under those subject headings constitutes mere factual material that cannot be withheld under the self-evaluative privilege; of course, the Court expresses no view on the admissibility, as opposed to the discoverability, of this information. Thus, defendant shall produce a copy of the report that conforms to these findings.

## II.    Work Product Doctrine

Defendant also asserts that all of the disputed reports were prepared in anticipation of litigation and therefore are exempt from discovery as protected work product. The Court will not belabor this point. Suffice it to say, the information detailed above that the Court has found cannot be withheld under the self-evaluative privilege does not qualify for the work product exemption either, because the material amounts to mere statements of fact as opposed to protected opinion work product. <u>See</u> <u>Dir., Office of Thrift Superv. v. Vison & Elkins</u>, 124 F.3d 1304, 1307 (D.C. Cir. 1997) (distinguishing between opinion and factual work product and finding the latter to be discoverable upon the proper showing). The Court is satisfied that plaintiff has demonstrated a substantial need for that information and undue hardship in acquiring the information in any other manner. <u>Id.</u> Hence, defendant's assertion of work product protection does not bar production of the information discussed above.

## **ORDER**

For the foregoing reasons, it is hereby **ORDERED** that defendant shall conform its production of the disputed materials to the determinations reflected above.

-4-

**SO ORDERED.**

/s/ John D. Bates

JOHN D. BATES
United States District Judge

Date:   December 17, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLAUDE GILBERT, ETC.,

        Plaintiffs

        v.

WMATA, ET AL.,

        Defendants

C.A. No. 85-535

**FILED**

OCT - 9 1986

JAMES F. DAVEY, Clerk

ORDER

This matter is before the Court on plaintiff's Motion to Compel WMATA to produce ten documents responsive to plaintiff's interrogatories numbers 2 and 3 but claimed to be privileged. The Court has considered the motion and opposition, and has viewed the documents in camera. Many of the documents refer to candid self-evaluation of WMATA's personnel, policies and escalator safety. The majority of these documents are not discoverable as they are protected by the public policy of encouraging such communication to improve service and safety. Other documents are not discoverable as they encompass the mental impressions and conclusions of WMATA personnel.

Plaintiff's Motion to Compel is hereby GRANTED in part and DENIED in part in accordance with the following directions:

1. Handwritten memorandum from G. Bratz to M. Mellington, dated   81. This document is not discoverable, as it concerns escalator evaluations for the purpose of instituting remedial safety measures.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLAUDE GILBERT, ETC.,          :

          Plaintiffs           :

          v.                   :              C.A. No. 85-535

WMATA, ET AL.,                 :          FILED

          Defendants           :          OCT - 9 1986

                    ORDER        JAMES F. DAVEY, Clerk

    This matter is before the Court on plaintiff's Motion to
Compel WMATA to produce ten documents responsive to plain-
tiff's interrogatories numbers 2 and 3 but claimed to be
privileged.  The Court has considered the motion and oppo-
sition, and has viewed the documents in camera.  Many of the
documents refer to candid self-evaluation of WMATA's per-
sonnel, policies and escalator safety.  The majority of
these documents are not discoverable as they are protected
by the public policy of encouraging such communication to
improve service and safety.  Other documents are not dis-
coverable as they encompass the mental impressions and con-
clusions of WMATA personnel.

    Plaintiff's Motion to Compel is hereby GRANTED in part
and DENIED in part in accordance with the following direc-
tions:

    1.  Hand-written memorandum from G. Bretz to M. Melling-
ton, dated . . . . This document is not discoverable, as
it concerns escalator evaluations for the purpose of insti-
tuting remedial safety measures.

# EXHIBIT B

2. Interoffice memorandum from G. Bretz to M. Melling-
ton, dated 2/4/85. The first page of this memo must be
produced in its entirety as it constitutes a solely factual
description of two post-accident inspections. The second
page is not discoverable as it contains the mental impres-
sions and conclusions of the post-accident inspection.

3. Inter-office memorandum from G. Bretz to D. Cook-
sley. The first and third paragraphs of this document are
to be produced as they relate to factual descriptions of
escalator accidents and inspections. The second and fourth
paragraphs contain mental impressions and conclusions of the
inspections and are therefore not discoverable.

The two page Westinghouse escalator maintenance
instructions are product recommendations and facts and shall
be produced.

4. Interoffice Memorandum from D. Cooksey to G. Bretz,
dated 2/19/85. This document contains candid self-criticism
of WMATA personnel and is therefore not discoverable.

5. Interoffice Memorandum from G. Bretz to D. Allmmond
dated 1/21/86. This document is a communication between an
agent of WMATA and WMATA counsel. It was prepared in
anticipation of litigation and contains a candid self-
evaluation of WMATA personnel and remedial suggestions. It
is therefore not discoverable.

6. Inter-office Memorandum from Roy Dodge to R. O'Ne..
dated 6/1/77. This document consists primarily of sugges-
tions for remedial improvements to escalators and is not
discoverable.

7.  Handwritten Memorandum of Farrell Canup.  WMATA asserts it has produced a typewritten facsimile to plaintiff.  There is therefore no basis for withholding the handwritten document and it shall be produced.

8.  Minutes of Safety Meeting on 4/10/79.  This document consists of self-evaluations of the escalators and a discussion of remedial measures for safety improvements.  It is not discoverable.

9.  and 10.  Inter-office Memoranda from G. Bretz to M. Mellington and D. Cooksey, dated 2/15/85 and 2/26/85 respectively.  These documents involve candid evaluations of information disclosed by G. Bretz to counsel for WMATA and are privileged from discovery.

Accordingly, it is by the Court, this _9_ day of October, 1986,

ORDERED that defendant WMATA produce for plaintiff and the Court's review, all discoverable documents as enumerated above.

George H. Revercomb, Judge

_10/9/86_
Date

-4-

Copies to:

John P. Coale, Esq.
George G. Misko, Esq.
Coale and Associates, P.C.
1019 19th Street, N.W.
Suite 1040
Washington, D.C.  20036

Frederick Abramson, Esq.
Kenneth J. Ingram, Esq.
Judy B. Chase, Esq.
Sachs, Greenbaum and Tayler
1140 Connecticut Avenue, N.W.
Suite 900

Donald Clower, Esq.
David Almond, Esq.
Office of the General Counsel
WMATA - Room 2A13
600 Fifth Street, N.W.
Washington, D.C.  20001

Greta C. Van Susteren, Esq.
511 E. Street, N.W.
Washington, D.C.

Thomas A. Medford, Sr., Esq.
WMATA - 600 Fifth Street, N.W.
Washington, D.C.  20001

Susan Ellis Wild, Esq.
1140 Connecticut Avenue, N.W.
Suite 900
Washington, D.C.  20036

Randell Hunt Norton, Esq.
John Jude O'Donnell, Esq.
Thompson, Larson, McGrail, O'Donnell and Harding
730 15th Street, N.W.
Washington, D.C.  20005

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

CONCHITA WHISENTON,                )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    Civil Action No. 88-2637
                                   )
WASHINGTON METROPOLITAN            )
AREA TRANSIT AUTHORITY,            )
                                   )
            Defendant.             )


## MEMORANDUM AND ORDER

The underlying complaint in this case concerns the injuries plaintiff allegedly sustained when alighting from a Washington Metropolitan Area Transit Authority (WMATA) bus. The Court has before it plaintiff's Motion to Compel Production of Documents, defendant's Opposition thereto; defendant's Motion for a Protective Order filed November 8, 1988 and plaintiff's opposition thereto; and defendant's Motion for a Protective Order filed December 16, 1988, and the Court heard counsel on these motions.

A. __Plaintiff's Motion to Compel.__

Plaintiff seeks to compel production of three types of documents: (1) the incident report prepared by the bus operator concerning the occurrence described in the complaint; (2) the complete driving record for the operator of the bus; and (3) any reports prepared by a supervisor or safety committee regarding the incident. The defendant asserts that the first and third

requests were prepared in anticipation of litigation, and are part of the self-evaluative and deliberative process; thus, they are non-discoverable. It contends that the driving record will not lead to any admissible evidence, as the plaintiff has not alleged a negligent hiring or negligent entrustment theory.

Rule 26 (b)(3) of the Federal Rules of Civil Procedure provides that:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has <u>substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.</u> In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of any attorney or other representative of a party concerning the litigation. (Emphasis added.)

1. <u>The Accident Report</u>

With respect to the first request, the accident report by the driver, the Court has examined the report itself, and found that the plaintiff is entitled to receive it. It appears to have been signed by the driver himself in accordance with the handbook for metrobus operators (plaintiff's ex. 1). Although the plaintiff has the ability to subpoena the driver, statements made in the incident report may be useful for impeachment purposes, as they are made immediately after or on the same day that an accident or incident occurs.

2

2. <u>Investigative Reports</u>

With respect to reports prepared by a supervisor or safety committee, the Court denies the plaintiff's motion to compel. The Court accepts the defendant's contentions that these reports are, realistically, prepared with an eye toward suits that may be filed as a result of an accident. Although WMATA requires that these reports always be prepared after an accident, and it has not produced any document stating flatly that they are prepared for litigation, this does not make them reports made in the ordinary course of business without an eye to litigation as plaintiff contends. A frequent defendant in personal injury cases, WMATA has ample reason to believe that accidents are likely to lead to claims or litigation. The Court was advised at argument that drivers are not required to file a signed statement or to testify, but rather simply appear for informal questioning which is summarized by the interviewer. This normal precaution has, on its face, little evidentiary value.

The Court also finds persuasive WMATA's contention that discovery of safety committee reports would intrude on WMATA's qualified privilege for self-examination. Discovery would impinge on WMATA's ability to evaluate when bus drivers were at fault, what the cause of an accident was, how best to prevent accidents in the future, as well as whether to settle a claim or defend it in court. <u>Bredice v. Doctor's Hospital, Inc.</u>, 50 F.R.D. 249, 250-251 (D.D.C. 1970), <u>aff'd</u>, 479 F.2d 920 (D.C.Cir. 1973).

3

As quoted above, Rule 26 (b)(3) permits discovery of documents prepared in anticipation of litigation only if the party requesting discovery asserts a "substantial need," which plaintiff has not done here, except with respect to the signed statements of the bus driver. She asserts that she suffered a badly broken left leg as a result of the accident, and that she was transported from the scene by ambulance and was unable to gather any names of witnesses or other information on the occurrence. If there were witnesses, the Court would order that she be furnished names and addresses and, on a proper showing, permitted to see their signed statements contained in any of the incident reports. Likewise, if any report contained photos, the plaintiff would have been entitled to see them despite the fact that they might have been made or taken in anticipation of litigation. However, the defendant answered plaintiff's interrogatories on October 11, 1988, and stated that there are no known eyewitnesses to any part of the occurrence, that it does not know the names of any passengers on the bus during the time when the accident occurred and that WMATA has no photographs, plats or diagrams of the scene.

Since mid-October, the plaintiff has had the name and work address of the bus driver, and those whom WMATA sent to the scene of the accident within the hour. She may take the deposition of the driver, and request his copy of the safety committee investigation, which may have been given to him following the investigation.

4

The Court concludes the plaintiff has no substantial need to compel production of accident reports prepared by WMATA supervisors and that such production would intrude on the privileges defendant claims.

C. <u>Driving Record</u>

With respect to the driving records of the bus driver, WMATA objects on the ground that it will not lead to the discovery of any admissible evidence, and defendant's counsel states generally that the reports contain vast quantities of irrelevant evidence, though counsel has not examined the report of this driver nor was it available at argument.

Plaintiff asserts that the record may contain important impeachment material, and that defendant has not yet admitted liability, although it accepts respondeat superior responsibility. Plaintiff contends that the records may show that the driver may have been warned that he had allowed a bus to move when the rear door was still open -- the situation that plaintiff alleges caused her injuries. Plaintiff states that, "A typical habit of operation is for the operator to allow the rear door emergency brake to contain the bus while it is left in a forward gear and thus permit the bus to begin moving as soon as the back door has been closed." However, such a practice does not rise to the level of habit pursuant to Fed. R. Evid. 406, and it may not have been recorded in the driving record in any event.

However, prior accidents of a similar type may be recorded in the driver's record, and these may be relevant, and the record

5

as a whole may disclose a negligent tendency.  The defendant is hereby ordered promptly to provide the Court with the single page "cover sheet" described at argument which summarizes all accidents in which the driver was involved, if any, as a bus driver  After in camera inspection, the Court will determine which parts of the file, if any, shall be tendered to plaintiff. The motion to compel discovery of the accident file will be resolved at that time.

B.  Defendant's November 8, 1988 Motion for a Protective Order

Defendant seeks an order protecting during depositions:  (1) the driving record of the operator involved in this occurrence; (2)  WMATA procedures for audit and review of bus driver actions and procedures.

Plaintiff did not fully explain the relevance of WMATA's procedures for auditing and reviewing bus driver actions to his theory of the case.  Defendant's motion to preclude discovery of WMATA's procedures under (2), above, is denied.  The motion as to (1), above, is mooted by the Court's ruling.

C.  Defendant's December 16, 1988 Motion for a Protective Order

Defendant's motion for a protective order to preclude the appearance of an Assistant General Manager at the December 19, 1988 motion hearing is denied as moot.

SO ORDERED.

_Roland A. Gasch_

UNITED STATES DISTRICT JUDGE

December 22, 1988.

6