## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Jane Washburn Robinson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:07-cv-1072 (PLF) |
| The Washington Metropolitan Area | ) | |
| Transit Authority, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S RESPONSE TO
### WMATA'S OBJECTIONS TO MAGISTRATE JUDGE'S RULINGS ON
### PLAINTIFF'S MOTION TO COMPEL DISCOVERY

WMATA's Objections[1] to Judge Robinson's discovery order is the latest in a series of efforts by WMATA to avoid providing full discovery in this case. Plaintiff filed a motion to compel because WMATA refused to produce *any* documents in response to Plaintiff's written discovery. After full briefing and oral argument, Judge Robinson granted Plaintiff's motion in part and ordered WMATA to provide certain core information about the case. For the reasons explained herein, WMATA's Objections do not come close to showing that Judge Robinson's discovery rulings were clearly erroneous or contrary to law.

Moreover, the Court should reject WMATA's Objections because they are, in large part, new arguments that were not made in response to Plaintiff's motion to compel. This Court referred this matter to Judge Robinson for the "management and resolution of all discovery-related issues." Referral Order (Dec. 4, 2007). The parties and the Court devoted substantial resources to resolving Plaintiff's motion to compel. Allowing WMATA to raise new arguments

---

[1]  Defendant WMATA's Objections to Magistrate Judge's Ruling on Plaintiff's Motion to Compel Discovery ("Objections").

for the first time in their Objections would render the Court's Referral Order and the proceedings before Judge Robinson pointless and a waste of Plaintiff's and the Court's time. The Court should not allow WMATA to circumvent its referral of discovery matters and should find that most of WMATA's objections have been waived.

## BACKGROUND

On September 16, 2005, Plaintiff Jane Washburn Robinson was injured when a Washington Metropolitan Area Transit Authority ("WMATA") bus negligently ran a red right at the intersection of Massachusetts Avenue and Belmont Street in Washington, D.C., striking Plaintiff's right arm as she was beginning to cross the street. Plaintiff brings this suit to recover damages for her resulting permanent injuries.

Plaintiff moved to compel responses to its written discovery, served on August 17, 2007, because WMATA refused to produce any documents in response.[2] On March 6, 2008, Judge Robinson held oral argument on Plaintiff's motion to compel, and at the conclusion of the hearing, granted in part and denied in part Plaintiff's motion. Specifically, the court issued an oral order ("Discovery Order"):

(1) granting Plaintiff's motion to compel witness statements taken by WMATA's investigator shortly after the accident because (i) WMATA had not demonstrated that the witness statements were attorney work product; and (ii) even if they were work product, Plaintiff had shown the substantial need and undue hardship necessary to order production of the statements;

(2) granting in part Plaintiff's motion to compel documents related to the bus driver, ordering WMATA to produce information relating to the bus driver's work performance;

---

[2]   *See* Mem. Supp. Pl. Mot. Compel Discovery (Feb. 1, 2008) (Docket No. 16); Defendant WMATA's Opp. Pl. Mot. Compel (Feb. 12, 2008) (Docket No. 17); and Reply Supp. Pl. Mot. Compel Discovery (Feb. 22, 2008) (Docket No. 19).

(3) granting Plaintiff's motion to compel information on previous WMATA traffic violations and pedestrian incidents at or near the intersection;

(4) denying Plaintiff's motion to compel information regarding other traffic control signal violations and pedestrian incidents;

(5) granting in part Plaintiff's motion to compel information relating to the training of WMATA employees, ordering WMATA to produce the training materials provided to the bus driver only; and

(6) denying Plaintiff's motion to compel documents relating to WMATA's actions taken in response to traffic control signal violations or pedestrian incidents, based on a commitment from WMATA that it would not attempt to introduce such evidence at trial.

## ARGUMENT

A magistrate judge's decision in a discovery dispute, a non-dispositive matter, should be reversed only if it is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); LCvR 72.2(c). "On review, the magistrate judge's decision is entitled to great deference unless it is clearly erroneous or contrary to law, that is, if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed."  *Pulliam v. Cont'l Cas. Co.,* No. 02-370, 2006 WL 3003977, at *2 (D.D.C. Oct. 20, 2006).

## I.     THE MAGISTRATE JUDGE CORRECTLY ORDERED WMATA TO PRODUCE RECORDED WITNESS STATEMENTS TAKEN AFTER THE ACCIDENT.

The Discovery Order requires WMATA to produce the recorded statements of three witnesses — Alzira Wells, Lydia Gumbs, and Kevin McIlwain — taken by a WMATA claims adjuster shortly after the accident.  Judge Robinson rejected WMATA's argument that this information was protected by the attorney work-product privilege, finding that the statements were not attorney work product and, even if they were, Plaintiff had met the required showing to

overcome this qualified privilege. WMATA has objected to the Discovery Order only as to Mr.
McIlwain, its former bus driver, arguing that Judge Robinson's ruling on the attorney work-
product privilege was erroneous and raising for the first time the additional argument that it is
protected by the attorney-client privilege. The Discovery Order was not clearly erroneous or
contrary to law. To the contrary, it was directly supported by applicable case law from this
Court.

### A.    Judge Robinson Properly Rejected WMATA's Work Product Argument.

The Discovery Order was consistent with this Court's decision in *Johnson v. Washington
Metropolitan Area Transit Authority*, 1990 WL 113877 (D.D.C. 1990). In *Johnson*, a similar
case in which WMATA refused to produce witness statements taken by its investigators after a
bus accident, the court rejected WMATA's work product objection for two reasons. First, the
court held that the witness statements were not protected by the work product doctrine because
they were taken "in the ordinary course of business" and not "primarily for the purposes of future
litigation." *Id.* at *2. Second, the court held that even if the statements were work product, they
must be produced because Plaintiff had demonstrated the substantial need and undue hardship
necessary for the discovery of work product. *Id.* at *2-*3. The court explained that
"[s]tatements taken from the witnesses shortly after the accident constitute unique catalysts in the
search for truth . . . in that they provide an immediate impression of the facts that cannot be
recreated or duplicated by a deposition that relies upon memory . . . ." *Id.* at *2 (quoting
*Southern Ry. Co. v. Lanham*, 403 F.2d 119, 128 (5th Cir. 1968) (internal quotations omitted).

The court's decision in *Johnson* applies here. WMATA did not show that its
investigators took the witness statements primarily for the purposes of litigation rather than in the
ordinary course of business. And even if the statements were work product, the court correctly

recognized that they are vital evidence of witnesses' memories close to the time of the accident that cannot be replicated. Thus, Judge Robinson's order was clearly grounded in applicable law.

WMATA objects based on *Lucy v. WMATA*, an opinion that it did ***not*** cite in its opposition to Plaintiff's motion to compel. And in any event, *Lucy* is not grounds for a reversal of the Discovery Order for three reasons. First, Judge Oberdorfer's opinion in *Johnson* was issued ***after*** the magistrate judge's order in *Lucy* and is a more comprehensive and well-reasoned opinion. Specifically, the court in *Lucy* failed to recognize that routine accident investigations conducted by WMATA's Office of Risk Management in the ordinary course of business are not "in anticipation of litigation" simply because a lawsuit is always possible: "WMATA's claim that it is routinely sued and always acts with that possibility in mind does not affect the fact that the witness statements were collected in the ordinary course of business." *Johnson*, at *4-*5. Statements taken in these routine investigations, *Johnson* explained, were not work product because they were not "made ***primarily*** for the purposes of future litigation." *Johnson*, at *5 (emphasis added).

Here, WMATA failed to establish that the witness interviews were primarily for the purposes of litigation. They were taken ***before*** WMATA was threatened with a lawsuit or was notified that Plaintiff had retained a lawyer. WMATA offered no evidence that its litigation counsel ordered the interviews to be taken or were even involved in the investigation at the time of the interviews. Indeed, WMATA has conceded that the investigation of the accident was a "standard procedure." Opposition Mot. Compel at 3. In other words, WMATA would have routinely investigated the accident and interviewed the bus driver regardless of the possibility of any future litigation.

Second, *Lucy* did not even consider the second basis for the *Johnson* decision and Judge Robinson's order:  even if the work product privilege applied, Plaintiff has shown substantial need and undue hardship necessary to overcome this qualified privilege.  The *Lucy* case did not involve witness statements and, therefore, did not consider the fact the post-accident witness statements "cannot be recreated or disputed."  *Id.* at 2.  Thus, it is inapposite.

Third, the Court should reject WMATA's argument that *Johnson* is distinguishable because it focused on statements from non-employee witnesses.  Nothing in *Johnson* indicates that its decision rests on that distinction.  And the *Lucy* opinion did not involve witness statements at all, let alone base its decision on the fact that the statement was taken from an employee.  Thus, WMATA cites no authority for the proposition that the work product analysis set forth in *Johnson* does not apply to its former employee, Mr. McIlwain.

Thus, the Discovery Order correctly rejected WMATA's claim of work product privilege.

**B.      The Court Should Reject WMATA's New Attorney-Client Privilege Argument.**

The Court should reject WMATA's new claim of attorney-client privilege for two reasons.[3]  First, WMATA waived any claim to attorney-client privilege by failing to raise this issue before Judge Robinson.  WMATA's opposition to Wyeth's motion to compel relied

---

[3]    WMATA cites the "privilege for information gathered in anticipation of litigation" as another privilege "in addition" to and "alternatively" to its claim of work product protection. Objections at 3, 5.  But whether information is prepared "in anticipation of litigation" is a requirement of the work product privilege, not an additional privilege.  *See* Fed. R. Civ. P. 26(b)(3)(A).

exclusively on the attorney work product doctrine.  It did not argue that the attorney-client privilege applied or cite any legal authority for its application.[4]

Second, even in its Objections, WMATA cites **no legal authority** for the application of the attorney-client privilege.  It relies on *Lucy*, but that decision was **not** based on the attorney-client privilege.  Moreover, as explained above, WMATA has not submitted any evidence to show that the claims representative was acting as an agent on behalf of WMATA attorneys or that its attorneys were involved in any way with this pre-litigation investigation.  To the contrary, as explained above, this investigation was done as part of WMATA's "standard procedure."  Thus, WMATA has not established that the bus driver's statement is protected by the attorney-client privilege.

## II.    THE MAGISTRATE JUDGE CORRECTLY ORDERED WMATA TO PRODUCE INFORMATION RELATED TO THE WORK PERFORMANCE OF THE BUS DRIVER.

The WMATA bus driver, Kevin McIlwain, is the primary defense witness in this case because WMATA's liability is based on his negligence.  Information about Mr. McIlwain is evidence at the heart of Plaintiff's case.  Accordingly, the Discovery Order correctly requires WMATA to produce documents regarding the bus driver's work performance.

WMATA's objections to producing information relating to Mr. McIlwain raises two threshold issues.  First, WMATA's proposed segregation of information about the bus driver into information "unrelated to the incident at issue" and "related to the incident at issue" is not a clear or workable distinction.  For example, WMATA has represented that Mr. McIlwain's termination from WMATA was not related to the incident.  Yet it seeks to withhold "records

---

[4]    The only mention of attorney-client privilege in WMATA's Opposition was in the "cut-and-paste" of its objections to Plaintiff's discovery.  But it was not part of its argument opposing the motion to compel, and WMATA did not present any legal authority to support it.

related to any internal discipline" under its argument regarding information "related to the incident." As a result, it is not clear whether WMATA is seeking to withhold all disciplinary records or just those related to the incident. And in any event, this incident concerns the manner in which Mr. McIlwain was performing his job. If he was disciplined or terminated for performance-related reasons, that that information is potentially relevant, whether or not the performance that ultimately provoked his termination was this incident. Judge Robinson drew an appropriate and workable distinction between performance-related information and non-performance related information (e.g., salary, health insurance, union activities). WMATA's proposed division should be rejected. If the Court does not affirm the Discovery Order and deny WMATA's Objections outright, it should at least require WMATA to produce the withheld documents about the bus driver *in camera* so that the Court will know what documents are at issue, rather than allowing it to withhold documents based on vague characterizations of categories of documents.

Second, notwithstanding the fact that WMATA does not represent Mr. McIlwain, WMATA counsel instructed him not to answer questions at his March 25 deposition based on the arguments made in its Objections. For example, it did not permit Mr. McIlwain to answer even the basic question of why he was terminated from WMATA. Nor was he permitted to testify about discussions that he had with WMATA supervisors about the incident or any disciplinary actions taken against him while at WMATA. In conjunction with this response, Plaintiff has filed a motion to compel answers to those questions and for sanctions.

### A. Information About The Bus Driver's Work Performance Is Relevant and Reasonably Calculated to Lead to the Discovery of Admissible Evidence.

The Court should reject WMATA's argument that information about the bus driver "unrelated to the incident at issue" should be immune from discovery for two reasons.

First, the applicable standard on this motion is not admissibility at trial, but whether the information is relevant and reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. 26(b)(1). There are many examples of information about the bus driver that is relevant and likely to lead to the discovery of admissible evidence, although not specifically related to the accident at issue. Most notable is any information relating to the bus driver's credibility. This case will hinge largely on whether the jury believes the bus driver's testimony that he did not run the red light. If there is *any* information in WMATA's file that involved dishonesty or untrustworthy behavior by the bus driver in *any* context at *any* time (e.g., embezzlement of funds, providing false information to his supervisors, falsifying time sheets, etc.), that information is directly relevant to his credibility as a witness. Mr. McIlwain testified at his deposition that he is a convicted drug-dealer who provided false information about his criminal history on non-WMATA job applications. Plaintiff should be allowed to explore information in WMATA's files about the bus driver for additional examples of his untruthfulness.

Moreover, information on his driving record at WMATA is potentially relevant. If WMATA has records of complaints about his performance as a bus driver, that information is potentially relevant to Plaintiff's claims.[5] At a minimum, this information is necessary to impeach his testimony at trial. If, for example, the driver testifies that he has a perfect driving record or has a practice of proceeding cautiously through pedestrian crossings at intersections, Plaintiff cannot impeach this testimony without information on his driving record. Likewise, if he testifies that, despite his previous involvement with illegal drugs, he did not use drugs or

---

[5]    Plaintiff can obtain his personal driving record through other means, but WMATA is on sole possession of information of his record as a WMATA bus driver.

alcohol while operating WMATA buses, Plaintiff cannot impeach this testimony without knowing his drug-testing history at WMATA.[6]

Second, the Court should reject WMATA's citation of *Burkart v. WMATA* as a basis for refusing to comply with Plaintiff's discovery. *Burkhart* did not involve the scope of discovery at all. Rather, it simply held that WMATA's sovereign immunity precluded claims against it for negligent hiring, training and supervision. But Plaintiff has not brought a claim against WMATA based on its negligent hiring, training or supervision. Her claim against WMATA is brought under the doctrine of respondeat superior based on the bus driver's negligence, and information regarding the bus driver is directly relevant to ***his*** negligence. For example, whether his previous driving record contains incidents involving pedestrian safety or traffic light incidents is relevant to whether he acted reasonably in this case. In addition, as explained above, information about the bus driver is relevant to assess the credibility of the bus driver. *Burkhart* is not a talismanic charm that allows WMATA to restrict Plaintiff's right to discovery on claims that she has brought. Information that is relevant to Plaintiff's claim is discoverable, even if it also would be relevant in a case alleging hiring, training and supervision. Thus, the Court should reject WMATA's citation to *Burkhart*.

**B.      The Court Should Reject WMATA's New Claim of "Self-Evaluative Privilege."**

WMATA claims that it should be allowed to withhold documents relating to "post-accident evaluations of the accident or any disciplinary action taken regarding the bus operator."

---

[6]     The bus driver's drug testing history must be produced by WMATA under the Discovery Order because it is related to his work performance. If there is any doubt, however, this Court should make it clear that WMATA must produce this information. Although Plaintiff cannot be sure because she been denied the pertinent information, there were indications in the bus driver's deposition that his testimony regarding his drug and alcohol use during his employment at WMATA was not credible.

Objections at 9.   WMATA does not contest that this information is relevant.  Nor could it, as evidence of "the mental impressions and opinions of any WMATA supervisor who evaluated this accident and made the decision on whether or not to discipline the bus driver" is directly probative to the key issue in this case — whether the bus driver was negligent.  Objections at 7. Instead, WMATA claims that it should not be required to produce this information because it is protected by the "self-evaluative privilege."  The Court should reject this new argument because (i) WMATA waived it by not raising it before Judge Robinson; and (ii) even if it were not waived, it does not apply in this case.

First, WMATA has waived any claim of protection under the "self-evaluative privilege" because it failed to raise this issue before Judge Robinson.  **_Nowhere_** in WMATA's responses to Plaintiff's written discovery is this purported privilege mentioned.  Nor did WMATA raise the self-evaluative privilege in its opposition to plaintiff's motion to compel.  This constitutes a clear waiver.

Second, even if WMATA had not waived a claim of "self-evaluative privilege," it does not apply here.  As an initial matter, the "self-evaluate privilege" is not an established privilege, and it is questionable whether it is recognized at all in this Circuit.  In *First Eastern Corp. v. Mainwaring,* 21 F.3d 465, 467 (D.C. Cir. 1994), the court found that the privilege had been waived because, as here, the defendant had not raised it originally.  But it went on to note that "federal courts should not create evidentiary privileges lightly."  *Id.* at n. 1.[7]  It explained that "a qualified privilege has been found only in limited cases involving areas of public health or public

---

[7]    This is consistent with the general principle that "testimonial exclusionary rules and privileges contravene the fundamental principle that the public . . . has a right to every man's evidence."  *University of Pennsylvania v. EEOC,* 493 U.S. 182, 189 (1990) (internal quotations and alterations omitted).

safety, and we would **_unlikely fashion a privilege lacking in historical or statutory basis_**." *Id.* (citations omitted); *see also F. T. C. v. TRW, Inc.*, 628 F.2d 207, 210 (D.C. Cir. 1980) (explaining that the privilege "at the most remains largely undefined and has not generally been recognized."). Thus, although not clear, the D.C. Circuit arguably was implying that while some lower courts had recognized the self-evaluative privilege, it likely would not recognize this novel privilege with no statutory or historical basis.

But even assuming that the privilege does apply in certain limited cases, it does not extend to routine post-accident investigations like the one at issue here.[8] The "limited cases" in which *Mainwaring* stated that the privilege had been applied involved situations where special committees had been formed to investigate public health or safety issues and the disclosure of these proceedings would cause these proceedings to be terminated. The first case to recognize the "self-evaluative privilege," *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249, 250 (D.D.C. 1970), involved a hospital that had created a special committee whose "sole objective" was the "improvement in the available care and treatment." The court found that "[t]hese committee meetings, being retrospective with the purpose of self-improvement, are entitled to a qualified privilege on the basis of this overwhelming public interest." *Id.* at 251. The Court explained that "[t]o subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, **_would result in terminating such deliberations_**." *Id.* (emphasis added); *see also Laws* v. *Georgetown University Hosp.*, 656 F.Supp. 824 (D.D.C. 1987) (finding privilege in context of same hospital safety review committee).

---

[8]    As the law firm that first advocated that the Superior Court recognize a "self-evaluative privilege," we believe (rightly or wrongly) that we can speak with authority about the scope of the privilege.

Similarly, in *Bradley v. Melroe Co.*, 141 F.R.D. 1 (D.D.C. 1992), the court recognized that "[i]f . . . a business entity ***in the ordinary course of its business*** conducts an investigation for its own purposes, the resulting investigation is (ordinarily) producible in (subsequent) civil pretrial discovery." *Id.* at 2-3 (emphasis added) (citing *Janiker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C.1982)). The Court recognized a qualified self-evaluative privilege only because the defendant was engaged in a overall process of "study[ing] reports of accidents involving their products for the purpose of ascertaining if preventative measures can be taken to avoid future accidents." *Id.*

WMATA has failed to produce any evidence that one supervisor's passing comment on an accident report rises to the level of the "deliberations" referred to in *Bredice* or the "study" referred to in *Bradley*, particularly where there is no evidence that the comment had anything to do with a process to undertake general remedial action regarding safety issues, as in *Bredice*. What occurred here was a routine investigation that it is conducted with every bus accident as part of its ordinary course of business and, therefore, is subject to discovery. *Bradley*, 141 F.R.D. at 1. Nor has WMATA presented evidence that requiring it to produce this information would cause it to "terminat[e]" its evaluations of bus accidents and disciplinary actions against its bus drivers. *Bredice*, 50 F.R.D. at 251. Thus, even if the Court were to recognize the "self-evaluative privilege," the policy factors on which it is based are not present here.

WMATA has cited cases in which some courts have expanded the self-evaluative privilege beyond its original intent to include virtually any case involving public health or public safety. But as explained above, this interpretation is too broad and is inconsistent with the policy underpinnings of the privilege. Allowing routine post-accident evaluations and disciplinary actions against employees to be cloaked in the "self-evaluative privilege" would extend the

privilege far beyond its origins and prevent the discovery of vast amounts of highly relevant information in litigation.

Thus, the Court should reject WMATA's claim based on the self-evaluative privilege.

### III.    THE MAGISTRATE JUDGE CORRECTLY ORDERED WMATA TO PRODUCE INFORMATION ABOUT PREVIOUS ACCIDENTS AT THE INTERSECTION.

Plaintiff is seeking information regarding other traffic incidents at or near the intersection at which this accident occurred.  This evidence is relevant to Plaintiff's claims for at least two reasons.  First, one of Plaintiff's theories is that the bus driver ran the red light because the sequence and interaction of the several lights at the intersection functioned in a way that encouraged such violations.  Whether WMATA vehicles have been involved in other traffic violations or pedestrian accidents at or around this intersection is directly relevant to proving this theory.  Second, evidence of previous accidents at the intersection is relevant to determine whether WMATA and the bus driver were on notice that this was a dangerous intersection and took reasonable steps to prevent accidents there.

The Court should reject WMATA's arguments as to why this information should not be produced for two reasons.  First, WMATA once again mistakenly cites *Burkhart*, a case that did not address discovery.  As explained above, Plaintiff is not suing WMATA for negligent hiring, training, or supervision and that is not the reason she seeks this information.  Thus, *Burkhart* is inapplicable.

Second, although Plaintiff accepts WMATA counsel's certification that this was the only "pedestrian/WMATA accident" since 1999, Plaintiff's request was not limited to pedestrian incidents.  It also specifically requested the production of information regarding "Traffic

Violations" near the intersection.[9]  This is a key component of the request because Plaintiff is

seeking information in which WMATA vehicles were found to been involved in traffic

violations at the intersection (particularly those involving allegations that it ran the red light),

including those that did not involve pedestrians.  Thus, WMATA has not satisfied this request,

and it should be required to comply with the Discovery Order.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Richmond T. Moore
F. Lane Heard III (D.C. Bar No. 291724)
Richmond T. Moore (D.C. Bar No. 483811)

Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC  20005
(202) 434-5000

*Attorneys for Plaintiff Jane Washburn
Robinson*

</div>

Dated:  April 3, 2008

---

[9]    "Traffic Violations" are defined as "any event in which a bus or other vehicle operated by WMATA was alleged by any person to have violated a traffic law or ordinance of any federal, state, local or municipal authority, including but not limited to events that resulted in citations or warnings by any governmental authority."

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of April 2008 a true and correct copy of the foregoing

Plaintiff's Response to WMATA's Objections to Magistrate Judge's Rulings on Plaintiff's

Motion to Compel Discovery was served on the defendant through the Court's ECF system.

David J. Shaffer
Kathleen Ann Carey
WASHINGTON METROPOLITAN TRANSIT AUTHORITY
600 Sixth Street, NW
Washington, DC 20001
dshaffer@wmata.com
kcarey@wmata.com

/s/  Richmond T. Moore
Richmond T. Moore

WILLIAMS & CONNOLLY LLP
725 12th Street, NW
Washington, DC 20005-5901
(202) 434-5000
*rtmoore@wc.com*

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Jane Washburn Robinson,** )<br><br>)<br>**Plaintiff,** )<br>**v.** )<br>)<br>**The Washington Metropolitan Area** )<br>**Transit Authority,** )<br>)<br>**Defendant.** )<br>) | **Civil Action No. 1:07-cv-1072 (PLF)** |

### PROPOSED ORDER

WMATA's Objections to Magistrate Judge's Ruling on Plaintiff's Motion to Compel

Discovery are **OVERRULED**.  WMATA is ordered to comply with Judge Robinson's discovery

rulings, as set forth at the March 6, 2008 hearing.  The Court clarifies that any information

relating to Mr. McIlwain's drug testing while employed by WMATA qualifies as "performance-

related" information that must be produced under Judge Robinson's order.


_____
THE HONORABLE PAUL L. FRIEDMAN
UNITED STATES DISTRICT JUDGE