UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **Jane Washburn Robinson,** | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil Action No. 1:07-cv-1072 (PLF) |
| **The Washington Metropolitan Area Transit Authority,** | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION TO COMPEL
DEPOSITION TESTIMONY FROM WMATA BUS DRIVER AND
MOTION FOR SANCTIONS**

On April 3, 2008, Plaintiff moved (i) to compel WMATA's former bus driver, Kevin McIlwain, to answer questions related to his performance as a WMATA bus driver, in accordance with Judge Robinson's March 6, 2008 discovery order; and (ii) for the costs incurred in filing the motion to compel and taking a second deposition of Mr. McIlwain.[1] Plaintiff's motions were filed in conjunction with her response to WMATA's objections to Judge Robinson's discovery order, which involve the same issues.[2]

Mr. McIlwain's deposition transcript was not available at the time of Plaintiff's motion to compel. Accordingly, Plaintiff submits herewith the relevant portions of Mr. McIlwain's deposition transcript in which WMATA instructed Mr. McIwain not to answer questions about

---

[1]   *See* Plaintiff's Motion to Compel Deposition Testimony From WMATA Bus Driver and Motion for Sanctions (April 3, 2008) ("Motion to Compel") (Docket No. 22).

[2]   *See* Plaintiff's Response to WMATA's Objections to Magistrate Judge's Rulings on Plaintiff's Motion to Compel Discovery ("Plaintiff's Response") (April 3, 2008) (Docket No. 23).

why he was terminated from WMATA, his discussions with WMATA employees about the bus accident at issue in this case, and disciplinary actions taken by WMATA against him. *See* Deposition of Kevin McIlwain (March 25, 2008), at 21-26 (instructing witness not to answer "line of questioning" regarding McIlwain's termination from WMATA) (excerpts attached as Exhibit 1); *id.* at 82-83 (instructing witness not to answer questions about "discipline" of Mr. McIlwain); *id.* at 96 (instructing witness not to answer questions regarding discipline).

Thus, for the reasons set forth in Plaintiff's Response and Motion to Compel, Plaintiff requests that the Court (i) compel answers to these questions and other work-performance related questions, in accordance with Judge Robinson's March 6, 2008 discovery order; and (ii) impose sanctions for the costs incurred as a result of WMATA's improper instructions not to answer.

                                      Respectfully submitted,

                                      /s/ Richmond T. Moore
                                      F. Lane Heard III (D.C. Bar No. 291724)
                                      Richmond T. Moore (D.C. Bar No. 483811)

                                        Williams & Connolly LLP
                                        725 Twelfth Street, NW
                                        Washington, DC  20005
                                        (202) 434-5000

                                      *Attorneys for Plaintiff Jane Washburn Robinson*

Dated:  April 14, 2008

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 14th day of April 2008, a true and correct copy of the foregoing Plaintiff's Supplemental Memorandum In Support of Motion to Compel Deposition Testimony From WMATA Bus Driver and Motion for Sanctions was served on the defendant through the Court's ECF system.

David J. Shaffer
Kathleen Ann Carey
WASHINGTON METROPOLITAN TRANSIT AUTHORITY
600 Sixth Street, NW
Washington, DC 20001
dshaffer@wmata.com
kcarey@wmata.com

                                        /s/ Richmond T. Moore
                                        Richmond T. Moore

                                        WILLIAMS & CONNOLLY LLP
                                        725 12th Street, NW
                                        Washington, DC 20005-5901
                                        (202) 434-5000
                                        *rtmoore@wc.com*

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

-------------------------------x

JANE WASHBURN ROBINSON,         :

    Plaintiff,                  :

    -vs-                        :  Civil Action

THE WASHINGTON METROPOLITAN     :  No. 1:07-cv-1072

AREA TRANSIT AUTHORITY,         :

    Defendant.                  :  PAGES 1 - 116

-------------------------------x


Deposition of Kevin McIlwain

Washington, D.C.

Tuesday, March 25, 2008


Reported by:  Tammy S. Newton


JOB NO. 186459


Esquire Deposition Services, LLC

DC 1-800-441-3376    MD 1-800-539-6398    VA 1-800-752-8979

00bfde8d-4c86-4690-805a-1d7769520de0

Page 21

1   as far as -- no.

2   Q    Were you terminated from WMATA?

3   A    Yes.

4           MS. CAREY: We made an objection to this
5   line of questioning, and it's pending in front of
6   Judge Freeman. I'm going to counsel him not to answer
7   these questions. I think at this point since WMATA is
8   the defendant and those are our records and we've made
9   an objection to them based on a number of privileges,
10  I'm going to instruct him not to answer the question.

11          MR. MOORE: Okay. You're going to instruct
12  him not to answer the question of whether he was
13  terminated?

14          MS. CAREY: He just answered whether he was
15  terminated. If you're going to go on and get -- and
16  I'm sure you are going to ask the details about that.
17  I'm objecting and instructing him not to answer.

18          MR. MOORE: Okay. I need to ask some
19  questions about the circumstances. What's the grounds
20  for your objection?

21          MS. CAREY: I think we made it pretty clear
22  in our objections that have been filed with Judge

Page 22

1  Freeman. This is self value. It's a privilege. It's
2  an opinion. There are a number of different
3  evidentiary problems with providing this information,
4  and it's been briefed now twice. I think our position
5  has been very clear.
6            MR. MOORE: Okay. And we will -- we'll --
7  just for the record, obviously we don't believe those
8  grounds are valid, and we will take that up with the
9  court. I do need to ask some surrounding questions in
10 order to establish the facts I need to determine
11 whether this information is privileged, and you can
12 object on a case-by-case basis to the questions.
13 Okay?
14           MS. CAREY: Well, if -- okay. I mean,
15 that's your deposition. But that's -- I'm telling you
16 that any information regarding that is going to be
17 objected to. So since we're briefing it before the
18 court, whether you ask the question in the deposition
19 or get a ruling and then redepose the witness if
20 it's -- if it's appropriate, I suppose it's up to you.
21 But it seems a lot more economical -- whatever. It's
22 your deposition. I'll instruct him not to answer each

```
                                                   Page 23
 1   of these questions.
 2            MR. MOORE:  Thanks.  We will reserve our
 3   right to continue the deposition after the court
 4   rules.  I just need to ask some surrounding questions
 5   to determine about this process.  Okay.
 6   BY MR. MOORE:
 7       Q    If she instructs you not to answer, don't
 8   answer.  Okay?
 9       A    Okay.
10       Q    I don't want you to tell me what the person
11   at WMATA told you.  I just want to ask some background
12   questions about the circumstances of your
13   conversation.  Okay?
14       A    Okay.
15       Q    When you met -- you met with somebody when
16   you were terminated from WMATA.  Who told you that you
17   had been terminated?
18            MS. CAREY:  Go ahead.
19            THE WITNESS:  Mr. Ballard.
20   BY MR. MOORE:
21       Q    Mr. Who?
22       A    Ballard.  Robert Ballard.
```

Page 24

1    Q    Is he an attorney?
2    A    No, supervisor.
3    Q    And what date was that on?
4    A    I want -- in between the 9th and 11th.
5    Q    Of?
6    A    Of August '06.
7    Q    Who else was in the room when he told you
8  this?
9    A    He was.  It was just me and him -- him and
10 I.
11   Q    And who did you -- who else did you tell --
12 he told you why you were fired, I'm sure.  Who else
13 did you tell about that?
14   A    Who else did I tell?
15   Q    Who did you tell after the meeting?  Did
16 you tell your friends, for example, why you had been
17 fired?
18   A    No, because I don't have friends.  I have
19 associates.
20   Q    Did you tell your associates why --
21   A    No.
22   Q    Did you tell your new employer why you had

Page 25

1   been fired, Greyhound?
2        A     No.
3        Q     They never knew why you had been fired?
4        A     No.
5        Q     Did they ask?
6        A     Not to my recollection, no.
7        Q     They never asked why you left your previous
8   job?
9        A     That was on the application.  But -- but
10  even -- even before all that -- all that had happened,
11  they had terminated me.  So as far as why -- I don't
12  remember what I put on there as far as why that I
13  left.  I don't remember what I had put on in there on
14  the application why did I leave my previous -- that
15  wasn't the previous one that I left.  I had like 10 --
16  10 jobs since I left Metro before I went to Greyhound.
17       Q     Okay.
18       A     And Greyhound, if I'm not mistaken,
19  Greyhound was in '07, just recently October '07.  I
20  had about 10 different jobs since then.  So they
21  wouldn't have been my previous one.
22       Q     Did any of those people ask you why you had

Page 26

1   been terminated from WMATA?

2        A     Yeah.

3        Q     Okay.  And did you tell them?

4        A     Yeah.

5        Q     You told them what Mr. Ballard had told you

6   essentially?

7        A     Right.

8        Q     Let's go back then and talk about the

9   places you worked since you left WMATA.  First of all,

10  when did you start working at WMATA?

11       A     You want training?

12       Q     Yes.

13       A     Or after training?

14       Q     Both.

15       A     Training was in January, starting in

16  January.

17       Q     Of what year?

18       A     '04.

19       Q     Okay.

20       A     Training was over with March 3rd.

21       Q     Okay.  What type of training did you

22  receive at that point?

Page 82

1  red -- she said something about me running a light,
2  and I just told her that there's a green arrow right
3  there, that my light stays green longer than the
4  opposite direction of traffic.
5      Q   Did you ever hear back from her --
6      A   No.
7      Q   -- the police officer?
8      A   She had said she gave her paperwork to
9  somebody, and basically it was out of her hands as far
10 as that.
11     Q   So you don't know whether -- you weren't
12 ever charged or convicted -- were you ever charged or
13 convicted -- let me scratch that.
14         Were you ever charged with anything as a
15 result of this accident by the police?
16     A   By the police, no.
17     Q   Were you ever charged with anything by
18 Metro as a result of this accident?
19         MS. CAREY:  I'm going to object and direct
20 him not to answer, for the previous reasons we stated.
21 That's discipline.  That's a question with respect to
22 discipline.

Page 83

1          MR. MOORE:  You represented in court his
2  discipline had nothing to do with this accident at the
3  hearing.
4          MS. CAREY:  That's right.
5          MR. MOORE:  So this is not --
6          MS. CAREY:  That's not what I said
7  actually.  The discussion was subsequent discipline.
8  You wanted all discipline records.  So --
9          MR. MOORE:  You said --
10         MS. CAREY:  I'm sorry.
11         MR. MOORE:  Go ahead.  I'm sorry.  I
12 interrupted you.
13         MS. CAREY:  I said his termination had
14 nothing to do with this accident.
15 BY MR. MOORE:
16    Q    The next person that -- who was the next
17 person you talked to at the scene of the accident
18 after the police officer?
19    A    Supervisor.  It was three of them down
20 there.  Mr. Williams.
21    Q    Was he the street supervisor?
22    A    All of them are considered street

```
                                             Page 96
 1     A     Going -- doing the 30 lines -- going
 2  through Washington Circle, four lanes, you have a far
 3  left, you have a middle, you have a right, and you
 4  have a turning lane.  And a right lane, you can either
 5  go straight across or go around the circle or you can
 6  turn with the car to turn left.  The person in the
 7  middle lane cut across from the middle lane to turn
 8  down George Washington Hospital from the middle lane.
 9  She got two lanes to go across, which is the improper
10  lane to come from anyway.  And she hit the bus.
11     Q     Were you charged in that accident?
12           MS. CAREY:  Same objection as previously.
13  I mean, charged by the police?
14  BY MR. MOORE:
15     Q     Charged by the police in that accident?
16     A     No.
17     Q     Were you charged by WMATA with that
18  accident?
19           MS. CAREY:  Same objection.  Don't answer
20  please.
21  BY MR. MOORE:
22     Q     Did WMATA do a report?
```