UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE WASHBURN ROBINSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WASHINGTON METROPOLITAN )<br>AREA TRANSIT AUTHORITY, )<br>)<br>Defendant. )<br>) | Case No. 07 CV 01072 (PLF) |

**DEFENDANT WMATA'S OBJECTIONS TO
MAGISTRATE JUDGE'S RULING ON PLAINTIFF'S
MOTION TO COMPEL DEPOSITION TESTIMONY AND FOR SANCTIONS**

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), pursuant to Fed. R. Civ. P. 72(a), hereby files its Objections to Magistrate Robinson's Order granting Plaintiff's motion to compel deposition testimony from WMATA's former bus operator, Kevin McIlwain, as clearly erroneous and requests that this Court set the Order aside.

The Plaintiff's sole basis for filing the second motion to compel deposition testimony was to obtain testimony from Mr. McIlwain regarding matters which are currently the subject of the Defendant's Objections to Magistrate Robinson's order dated March 3, 2008. One area of questioning which remains unresolved is whether WMATA or its former employee Mr. McIlwain, need provide documents and/or testimony regarding the grounds for his termination eleven (11) months after the

1

accident in question.[1]  The other area which is unresolved is whether WMATA or Mr. McIlwain need provide documents and/or testimony regarding discipline imposed upon Mr. McIlwain for this incident or for any others during his employment with WMATA. The portions of the deposition transcript which include the discussions on the objections are attached hereto.  Both of these issues have been brought to the Court's attention in Defendant's Objections to Judge Magistrate's March 3, 2008 order filed on March 20, 2008.

Although discovery does not close in this case until May 30, 2008, counsel for Plaintiff proceeded with the deposition of Mr. McIlwain on March 25, 2008, while these discovery disputes remain unresolved.  The reasonable alternative would have been to note the deposition following the Court's ruling on the objections, if required by the substance of the Court's ruling.  By refusing to wait, counsel for Plaintiff put the Defendant in a position requiring it to object.  Failure to object to the questions regarding termination and discipline would in essence render Defendant's pending Objections moot.

Counsel for the Defendant has indicated on the record, that the Defendant had no objection to re-deposing Mr. McIlwain following the Court's ruling, if that ruling were adverse to the Defendant's position.

Under the circumstances, the Defendant objects to Magistrate Robinson's Order dated May 9, 2008 in which the Court ordered that the operator be re-deposed by May

---

[1] Counsel has already represented to the Court that Mr. McIlwain's termination was not as a result of this accident involving Ms. Robinson.

20, 2008 on the two remaining issues, and that WMATA pay monetary sanctions to the Plaintiff by May 22, 2008.

Defendant's reasons for counseling the deponent not to answer certain questions, as explained herein, were substantially justified. Pursuant to Fed. R. Civ. P. 37(a)(4)(A), therefore, the Court was in error in imposing monetary sanctions which should only be imposed in the absence of substantial justification.

For these reasons, and any others which the Court deems just and equitable, the Defendant requests that the Court set aside the Order of Magistrate Robinson dated May 9, 2008.

> Respectfully submitted,
>
> \_\_\_\_\_/s/\_\_\_\_\_
> Kathleen A. Carey #357990
> Assistant General Counsel
> 600 Fifth Street, N.W.
> Washington, D.C. 20001
> (202) 962-1496
> Kcarey@wmata.com
> Attorney for Defendant WMATA

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of Defendant WMATA's Objections to Magistrate Judge's Ruling on Plaintiff's Motion to Compel Deposition Testimony and for Sanctions was served through the Court efiling this 16th day of May, 2008 to:

F. Lane Heard III
Richmond T. Moore
Williams & Connolly LLP
725 12th Street, N.W.
Washington, D.C.  20005

                                                       /s/
                                         Kathleen A. Carey

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE WASHBURN ROBINSON, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 07 CV 01072 (PLF) |
| WASHINGTON METROPOLITAN ) AREA TRANSIT AUTHORITY, ) | |
| Defendant. ) | |

**ORDER**

Upon consideration of Defendant WMATA's Objections to Magistrate Judge's Ruling on Plaintiff's Motion to Compel Deposition Testimony and for Sanctions and good cause having been shown, it is by the Court this ____ day of _____, 2008:

ORDERED, that the Objections are sustained for the reasons relied upon in the Defendant's pleading and the Magistrate Judge's ruling of May 9, 2008 is set aside.

_____
United States District Judge

Copies electronically to:

Kathleen A. Carey
Counsel for Defendant

F. Lane Heard III
Richmond T. Moore
Counsel for Plaintiff

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLUMBIA

 3  ------------------------------x

 4  JANE WASHBURN ROBINSON,         :

 5      Plaintiff,                  :

 6      -vs-                        :  Civil Action

 7  THE WASHINGTON METROPOLITAN     :  No. 1:07-cv-1072

 8  AREA TRANSIT AUTHORITY,         :

 9      Defendant.                  :  PAGES 1 - 116

10  ------------------------------x

11                                     COPY

12

13            Deposition of Kevin McIlwain

14                 Washington, D.C.

15             Tuesday, March 25, 2008

16

17

18

19  Reported by:  Tammy S. Newton

20

21  JOB NO. 186459

22
```

Page 18

1 documents to her letter?
2  A  No. When you say documents, documents as
3 far as I have to see -- as far as like -- the
4 documents that you have right there, would you say
5 those type of documents?
6  Q  Yes, anything.
7  A  No, no. It was just a letter informing
8 about this, and she would tell me what you all would
9 have, and that was it. She didn't send no documents
10 of anything as far as the accident or nothing.
11  Q  Okay. So it was just a letter; nothing was
12 attached to the letter?
13  A  No.
14  Q  Right?
15  A  Correct.
16     (Deposition Exhibit No. 1 was marked for
17 identification and attached to the transcript.)
18 BY MR. MOORE:
19  Q  Mr. McIlwain, you started to say something.
20  A  You asked me have I been using any drugs.
21 I don't know if you consider it drugs or not. I use
22 protein shakes, if you all consider that drugs. I use

Page 19

1 that when I work out.
2  Q  Okay, thank you. I'm handing you what's
3 been marked as McIlwain No. 1. This is a copy of your
4 amended notice of deposition. Are you familiar with
5 this document?
6  A  It's the second one.
7  Q  You recall that I sent this document to you
8 and you were served with this document?
9  A  Yeah. A guy gave it to me.
10  Q  Right. And I want to turn to the last
11 page, if you would, that's marked Exhibit A. Are you
12 with me?
13  A  Yes, sir.
14  Q  I just want to go through these categories
15 of documents that we've asked you to bring with you to
16 your deposition. Now you said you had some materials
17 in your car that you wanted to give us at the break,
18 correct?
19  A  Yes.
20  Q  Okay. So I want to know if you have any of
21 these categories of documents, either with you or at
22 home or anywhere in your possession or control. Okay?

Page 20

1  A  Okay.
2  Q  What documents do you have relating to the
3 incident on September 16, 2005?
4  A  I would say none. And then this actually
5 is my first time reading this. When the guy did give
6 me this one -- this is the one where we changed dates,
7 right?
8  Q  Yes.
9  A  Okay. Yeah, I never really read it. But
10 if anything -- if anything that I do have, it's -- I
11 know -- I know I had when I graduated from training, I
12 was a honor student when I was training. I have their
13 diploma. As far as the accident, I don't recall to
14 have anything as far as that.
15  Q  Did you keep a file when you left WMATA
16 regarding your time there and the documents you were
17 provided when you worked at WMATA?
18  A  No, only -- only the document that says
19 when I -- when I graduated from class, from training.
20  Q  Okay.
21  A  I still have the driver's manual, the
22 little book they might give you, but any documentation

Page 21

1 as far as -- no.
2  Q  Were you terminated from WMATA?
3  A  Yes.
4     MS. CAREY: We made an objection to this
5 line of questioning, and it's pending in front of
6 Judge Freeman. I'm going to counsel him not to answer
7 these questions. I think at this point since WMATA is
8 the defendant and those are our records and we've made
9 an objection to them based on a number of privileges,
10 I'm going to instruct him not to answer the question.
11     MR. MOORE: Okay. You're going to instruct
12 him not to answer the question of whether he was
13 terminated?
14     MS. CAREY: He just answered whether he was
15 terminated. If you're going to go on and get -- and
16 I'm sure you are going to ask the details about that.
17 I'm objecting and instructing him not to answer.
18     MR. MOORE: Okay. I need to ask some
19 questions about the circumstances. What's the grounds
20 for your objection?
21     MS. CAREY: I think we made it pretty clear
22 in our objections that have been filed with Judge

Page 22

1 Freeman. This is self value. It's a privilege. It's
2 an opinion. There are a number of different
3 evidentiary problems with providing this information,
4 and it's been briefed now twice. I think our position
5 has been very clear.
6          MR. MOORE: Okay. And we will -- we'll --
7 just for the record, obviously we don't believe those
8 grounds are valid, and we will take that up with the
9 court. I do need to ask some surrounding questions in
10 order to establish the facts I need to determine
11 whether this information is privileged, and you can
12 object on a case-by-case basis to the questions.
13 Okay?
14          MS. CAREY: Well, if -- okay. I mean,
15 that's your deposition. But that's -- I'm telling you
16 that any information regarding that is going to be
17 objected to. So since we're briefing it before the
18 court, whether you ask the question in the deposition
19 or get a ruling and then redepose the witness if
20 it's -- if it's appropriate, I suppose it's up to you.
21 But it seems a lot more economical -- whatever. It's
22 your deposition. I'll instruct him not to answer each

Page 23

1 of these questions.
2          MR. MOORE: Thanks. We will reserve our
3 right to continue the deposition after the court
4 rules. I just need to ask some surrounding questions
5 to determine about this process. Okay.
6 BY MR. MOORE:
7    Q    If she instructs you not to answer, don't
8 answer. Okay?
9    A    Okay.
10   Q    I don't want you to tell me what the person
11 at WMATA told you. I just want to ask some background
12 questions about the circumstances of your
13 conversation. Okay?
14   A    Okay.
15   Q    When you met -- you met with somebody when
16 you were terminated from WMATA. Who told you that you
17 had been terminated?
18         MS. CAREY: Go ahead.
19         THE WITNESS: Mr. Ballard.
20 BY MR. MOORE:
21   Q    Mr. Who?
22   A    Ballard. Robert Ballard.

Page 24

1    Q    Is he an attorney?
2    A    No, supervisor.
3    Q    And what date was that on?
4    A    I want -- in between the 9th and 11th.
5    Q    Of?
6    A    Of August '06.
7    Q    Who else was in the room when he told you
8 this?
9    A    He was. It was just me and him -- him and
10 I.
11   Q    And who did you -- who else did you tell --
12 he told you why you were fired, I'm sure. Who else
13 did you tell about that?
14   A    Who else did I tell?
15   Q    Who did you tell after the meeting? Did
16 you tell your friends, for example, why you had been
17 fired?
18   A    No, because I don't have friends. I have
19 associates.
20   Q    Did you tell your associates why --
21   A    No.
22   Q    Did you tell your new employer why you had

Page 25

1 been fired, Greyhound?
2    A    No.
3    Q    They never knew why you had been fired?
4    A    No.
5    Q    Did they ask?
6    A    Not to my recollection, no.
7    Q    They never asked why you left your previous
8 job?
9    A    That was on the application. But -- but
10 even -- even before all that -- all that had happened,
11 they had terminated me. So as far as why -- I don't
12 remember what I put on there as far as why that I
13 left. I don't remember what I had put on in there on
14 the application why did I leave my previous -- that
15 wasn't the previous one that I left. I had like 10 --
16 10 jobs since I left Metro before I went to Greyhound.
17   Q    Okay.
18   A    And Greyhound, if I'm not mistaken,
19 Greyhound was in '07, just recently October '07. I
20 had about 10 different jobs since then. So they
21 wouldn't have been my previous one.
22   Q    Did any of those people ask you why you had

Page 82

1 red -- she said something about me running a light,
2 and I just told her that there's a green arrow right
3 there, that my light stays green longer than the
4 opposite direction of traffic.
5    Q    Did you ever hear back from her --
6    A    No.
7    Q    -- the police officer?
8    A    She had said she gave her paperwork to
9 somebody, and basically it was out of her hands as far
10 as that.
11   Q    So you don't know whether -- you weren't
12 ever charged or convicted -- were you ever charged or
13 convicted -- let me scratch that.
14        Were you ever charged with anything as a
15 result of this accident by the police?
16   A    By the police, no.
17   Q    Were you ever charged with anything by
18 Metro as a result of this accident?
19        MS. CAREY: I'm going to object and direct
20 him not to answer, for the previous reasons we stated.
21 That's discipline. That's a question with respect to
22 discipline.

Page 83

1        MR. MOORE: You represented in court his
2 discipline had nothing to do with this accident at the
3 hearing.
4        MS. CAREY: That's right.
5        MR. MOORE: So this is not --
6        MS. CAREY: That's not what I said
7 actually. The discussion was subsequent discipline.
8 You wanted all discipline records. So --
9        MR. MOORE: You said --
10       MS. CAREY: I'm sorry.
11       MR. MOORE: Go ahead. I'm sorry. I
12 interrupted you.
13       MS. CAREY: I said his termination had
14 nothing to do with this accident.
15 BY MR. MOORE:
16   Q    The next person that -- who was the next
17 person you talked to at the scene of the accident
18 after the police officer?
19   A    Supervisor. It was three of them down
20 there. Mr. Williams.
21   Q    Was he the street supervisor?
22   A    All of them are considered street

Page 84

1 supervisors.
2    Q    Mr. Norman Williams?
3    A    Yeah, he was there. If I'm not mistaken,
4 Mr. Kelly was there and a lady. I don't know her
5 name.
6    Q    Who's Mr. Kelly?
7    A    He's a supervisor too.
8    Q    Does the name Phillips ring --
9    A    The lady?
10   Q    Yeah. Does that ring a bell?
11   A    No, it doesn't ring a bell.
12   Q    You just didn't know the lady's name?
13   A    No.
14   Q    Was she with Metro?
15   A    Yes.
16   Q    And did you see any of them talking to Ms.
17 Robinson?
18   A    No, no. The thing, Ms. Robinson might have
19 been gone by the time she got down there.
20   Q    So the ambulance had left?
21   A    Yes.
22   Q    Before any --

Page 85

1    A    WMATA supervisors had the chance to talk
2 with Ms. Robinson.
3    Q    Okay. Were you ever able to talk to Ms.
4 Robinson that day?
5    A    Before she had -- before she had left to go
6 to the hospital to get in the ambulance, I had told
7 Ms. Carey this too, I asked her was she all right.
8 That was just a way my saying regardless if you're
9 hurt or not, are you all right, an affection of
10 caring. That's how I look at it because that's how I
11 intended for it to be, and was she all right. And she
12 said no. I ran the light, and I told her that she
13 wasn't paying attention because I'm -- when I asked
14 her that, I care -- I cared, you know. It is not
15 about Metro or anything or anything else. It's about
16 two human beings. You know what I'm saying? And
17 however she look at it, my fault, or I ever look at it
18 as her fault, it could have been a lot worse than what
19 it was. I took may job very seriously. I care about
20 my job. I care about the people on the bus. I care
21 about the people that are walking around the street,
22 more than some of them care about themself. And she

Page 94

1  Q   The second incident is February 21st, '05.
2      Do you see that?
3  A   Uh-huh.
4  Q   What was that incident about?
5  A   February -- there's only three incidents
6  that I had, Ms. Robinson, the one with the -- me just
7  coming in '04 and then the 2005 -- the 2005.
8      MS. CAREY:  Don't guess.  If you remember,
9  tell Mr. Moore, but don't guess.
10     THE WITNESS:  I'm not going to guess.  Like
11 I said, it's only three of them that I had, and the
12 one that I had after Ms. Robinson, it wouldn't have
13 been 2005.
14 BY MR. MOORE:
15 Q   Okay.
16 A   There's only three that I had.
17 Q   Okay.
18 A   One before Ms. Robinson, Ms. Robinson, and
19 one after.
20 Q   So you had an accident after Ms. Robinson's
21 incident?
22 A   Right.

Page 95

1  Q   And this was taken shortly after -- at
2  least by October 5th, '05.  So within days after Ms.
3  Robinson's accident, correct, this accident report
4  form?
5  A   I guess.  But the date of this accident.
6  Q   How many accidents did you have before Ms.
7  Robinson's?
8  A   One.
9  Q   So this form is incorrect when it lists two
10 accidents?
11 A   If I have to go on my recollection, yes.
12 Q   You don't recall any accident on February
13 21st, 2005?
14 A   No.
15 Q   So this -- even though this form indicates
16 there was an accident on February 21st, 2005, you had
17 no recollection of that?
18 A   No.
19 Q   But you do have a recollection of an
20 accident after Ms. Robinson's accident?
21 A   Yes.
22 Q   What was that about?

Page 96

1  A   Going -- doing the 30 lines -- going
2  through Washington Circle, four lanes, you have a far
3  left, you have a middle, you have a right, and you
4  have a turning lane.  And a right lane, you can either
5  go straight across or go around the circle or you can
6  turn with the car to turn left.  The person in the
7  middle lane cut across from the middle lane to turn
8  down George Washington Hospital from the middle lane.
9  She got two lanes to go across, which is the improper
10 lane to come from anyway.  And she hit the bus.
11 Q   Were you charged in that accident?
12     MS. CAREY:  Same objection as previously.
13 I mean, charged by the police?
14 BY MR. MOORE:
15 Q   Charged by the police in that accident?
16 A   No.
17 Q   Were you charged by WMATA with that
18 accident?
19     MS. CAREY:  Same objection.  Don't answer
20 please.
21 BY MR. MOORE:
22 Q   Did WMATA do a report?

Page 97

1  A   As far as I know.  The police was there.
2  Supervisor was there.
3  Q   Did you fill out similar paperwork with
4  respect to that accident?
5  A   Yes.
6  Q   Do you recall who -- who was present and
7  who you provided the statement to about that accident?
8  A   Supervisor Mr. Hall, he was there.  I don't
9  know the police name.
10 Q   Is he an attorney?
11 A   Mr. Hall?
12 Q   Yes.
13 A   No.  He's a supervisor.
14 Q   He's a street supervisor?
15 A   Yes.
16 Q   Did you talk to the police about that
17 accident?
18 A   Yes.
19 Q   And when was that accident?
20 A   It might have been late '05 -- late '05.
21 It wasn't -- it wasn't beginning of '05.  Late '05.
22 Q   So Ms. Robinson was in September of '05?