**IN THE**
**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>**Jane Washburn Robinson,** )<br> )<br>**Plaintiff,** )<br>**v.** )<br> )<br>**The Washington Metropolitan Area** )<br>**Transit Authority,** )<br> )<br>**Defendant.** )<br>_____ ) | **Civil Action No. 1:07-cv-1072 (PLF)** |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN RESPONSE TO**
**WMATA'S OBJECTIONS TO MAGISTRATE JUDGE'S RULINGS ON**
<u>**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**</u>

On May 14, 2008, WMATA produced a privilege log identifying specific documents that it is withholding as privileged.[1]  Plaintiff submits the privilege log to the Court, along with this supplemental memorandum, because the log further demonstrates that WMATA's objections and privilege claims have no merit.  First, the privilege log demonstrates that WMATA is attempting claim privilege over certain information, while at the same time producing and making affirmative use of the same type of information.  Even if WMATA had a valid claim of privilege (it does not), it has waived such claim through its selective disclosure of such purportedly privileged information.  Second, the broad scope of the privilege log further illustrates that WMATA is attempting to expand improperly the "self-evaluative privilege."

---

[1]  May 14, 2008 email from Kathleen Carey to Richmond Moore with attached privilege log (attached hereto as Exhibit 1).

### A.     WMATA Has Selectively Disclosed Allegedly Privileged Information.

The privilege log makes it clear that WMATA is attempting to use its claims of privilege as a sword and a shield by disclosing information that it is favorable to it, yet claiming privilege over other similar information.  Even if the information withheld by WMATA were privileged, such selective disclosure of information waives any privilege claim.  *See, e.g., In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) (finding "selective disclosure for tactical purposes" waived the privilege claim); *see also id.* at 804 n. 33 (quoting district court's finding that "[t]his kind of selective waiver is precisely the kind of manipulation and sl(e)ight-of-hand that led to the waiver doctrine in the first place.").

The privilege log reveals at least three examples of WMATA's selective disclosure of purportedly privileged information:

### 1.     Bus Driver's Accident Report.

The privilege log indicates, for the first time, that WMATA is withholding a document described as "WMATA Motor Vehicle Accident Report dated September 16, 2005 by Operator McIlwain."[2]  Kevin McIlwain was the bus driver operating the WMATA bus that struck Plaintiff on September 16, 2005.  It is hard to imagine any document more relevant to this case than an accident report by the bus driver from the day of the accident.

As an initial matter, WMATA has not set forth any basis for claiming that this highly relevant information is privileged.  Indeed, until it served its privilege log on May 14, WMATA never even notified Plaintiff that this document existed.  WMATA certainly has not met its burden of showing that this document is protected by any privilege.

---

[2]     *See* Privilege Log, No. B. 21.

Moreover, WMATA has produced other accident reports from Mr. McIlwain. For example, it produced a document completed by Mr. McIlwain entitled "Supplemental Questions to Bus-V Accident Reports."[3] It has offered no explanation as to why it has produced some of Mr. McIlwain's reports about the accident, yet claims others are privileged.

### 2.     Mr. McIlwain's Disciplinary Record

WMATA also is attempting to selectively disclose information about Mr. McIlwain's disciplinary record. WMATA argues that all "[d]ocuments associated with WMATA's self-evaluation/self-analysis following an accident should be accorded protection" under the so-called "self-evaluative privilege."[4] Yet WMATA has no problem producing evaluations of accidents when they are favorable to Mr. McIlwain and WMATA.

For example, WMATA produced an Accident Report Form indicating that WMATA had classified two other accidents by Mr. McIlwain as "non-preventable."[5] In Mr. McIlwain's deposition, WMATA's counsel specifically highlighted WMATA's evaluation of those incidents:

> Q:     Exhibit No. 4 [the Accident Report Form], doesn't NP mean non-preventable?
>
> A:     Yes.
>
> Q      So on these -- at least October 23rd, 2004, the incident that you recall you were found to have been in an accident that was not preventable by you, correct?
>
> A      Yes.

---

[3]     *See* WMATA00017 (attached as Exhibit 2).

[4]     WMATA's Objections to Magistrate Judge's Rulings on Plaintiff's Motion to Compel Discovery (Mar. 20, 2008) (Document No. 21), at 7.

[5]     WMATA 000136-37 (attached as Exhibit 3).

> Q     And to the extent that there is an accident on 2/21/05, that was the same rating for that accident, correct?
>
> A     Yes.[6]

In its Reply, WMATA went even further by using this information to imply to the Court that Mr. McIlwain's disciplinary record was clean: "[The Accident Report Form] also revealed the operator's history of accidents in the preceding 365 days. That history is that Operator McIlwain was involved in two non-preventable incidents and that no discipline was imposed for either incident. Plaintiff, therefore, has been provided with all the discipline information to which he [sic] is arguably entitled as a result of this accident."[7]

Notwithstanding its disclosure and use of this information, WMATA seeks to withhold other similar information about Mr. McIlwain as privileged. Indeed, the Accident Report Form itself attempts a selective disclosure by disclosing the classification of Mr. McIlwain's prior accidents as "non-preventable," yet redacting the line indicating how WMATA had classified the accident in **this case**. Moreover, WMATA has produced another document from Mr. McIlwain's supervisor at WMATA concluding (based on Mr. McIlwain's one-sided account): "Based on the information available, can the employees performance be completely discounted as a causative or contributing factor to the accident? No."[8]

---

[6]   Deposition of Kevin McIlwain ("McIlwain Dep.") (Mar. 25, 2008), at 111-12 (excerpts attached as Exhibit 4).

[7]   Defendant WMATA's Reply to Plaintiff's Response to Defendant WMATA's Objections to Magistrate Judge's Rulings on Plaintiff's Motion to Compel Discovery (Apr. 11, 2008) (Document No. 24), at 7.

[8]   *See* WMATA 00046 (attached as Exhibit 5).

Moreover, notwithstanding WMATA's implication that Mr. McIlwain had a clean driving record, the privilege log tells a very different story. It chronicles several other incidents and disciplinary actions involving Mr. McIlwain.[9] WMATA has refused to produce information about those other incidents. Indeed, it instructed Mr. McIlwain not to answer questions about one of the other incidents at his deposition.[10] Thus, WMATA's plainly has been selective as to what information about Mr. McIlwain's "discipline" it claims is privileged.

### 3.    Drug and Alcohol Testing.

The privilege log contains several documents relating to Mr. McIlwain's drug and alcohol testing. But WMATA did not object to Mr. McIlwain's testimony in his deposition claiming that his test results on the day of the accident were "clean" and that WMATA did not discipline him as a result of the accident:

> Q    What were the results of the urine test?
>
> A    I mean, they didn't discipline me as far as -- I guess -- as far as letting me -- it's clean. It's clean because I don't do anything. I stopped drinking and everything.[11]

Thus, WMATA has allowed Mr. McIlwain to partially testify about his drug and alcohol testing history and results, yet it is refusing to produce documents that would allow Plaintiff to determine whether this testimony is true.

---

[9]    *See*, *e.g.*, Privilege Log No. B. 15 ("Investigation Report Dated April 26, 2005 by S.L. Smith – complaint."); Privilege Log No. B. 16 ("Supervisor Report and Investigation Report dated March 20, 2006 – SOP violation."); Privilege Log No. B. 17 ("Supervisor Report and Investigation Report dated January 24, 2006 – SOP violation"); Privilege Log No. B. 19 ("Accident Report Form dated February 18, 2006 by Robert Ballard"); Privilege Log No. B. 20 ("Street Supervisor Report dated February 18, 2006 by William F. Hall – vehicle collision"); Privilege Log No. B. 21 ("WMATA Motor Vehicle Accident Report dated February 18, 2006 by Operator McIlwain").

[10]    McIlwain Dep. at 95-99.

[11]    McIlwain Dep. at 88.

\*     \*     \*

Thus, it is clear that WMATA is only claiming a purported "self-evaluation privilege" when it suits its self-interest.  As a result, if WMATA's claim of privilege is upheld, Plaintiff (and ultimately the jury) will only receive WMATA's one-sided version of the facts in this case. The Court should reject this manipulative, hide-and-seek approach to discovery and affirm Judge Robinson's discovery orders rejecting WMATA's privilege claims.

**B.     The Privilege Log Demonstrates WMATA's Misapplication of the "Self-Evaluative Privilege."**

As Plaintiff's explained in her Response, WMATA's purported "self-evaluative privilege" claim "would extend the privilege far beyond its origins and prevent the discovery of vast amounts of highly relevant information in litigation."[12]  The privilege log illustrates this point.  WMATA is claiming privilege over 36 documents (with an untold number of pages) – substantially *more* than the 22 pages of documents that WMATA has claimed represent the entire universe of documents relevant this case.  Essentially, WMATA is claiming that Mr. McIlwain's entire personnel file is privileged.  WMATA has presented no evidence that *any* of this information was part of any special safety evaluation process that would entitle it to protection under a self-evaluative privilege, let alone presented any authority that the self-evaluative privilege allows a defendant to engage in such a wholesale withholding of documents.[13]  Thus, the privilege log further demonstrates why the Court should reject WMATA's belated claim of a "self-evaluative privilege."

---

[12]  Plaintiff's Response to Defendant WMATA's Objections to Magistrate Judge's Rulings on Plaintiff's Motion to Compel Discovery (Apr. 3, 2008) (Document No. 23), at 13-14.

[13]  *See id*. at 10-14.

**CONCLUSION**

For the foregoing reasons and those stated previously, Plaintiff requests that the Court affirm Judge Robinson's discovery orders.

Respectfully submitted,

/s/ Richmond T. Moore
F. Lane Heard III (D.C. Bar No. 291724)
Richmond T. Moore (D.C. Bar No. 483811)

Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC  20005
(202) 434-5000

*Attorneys for Plaintiff Jane Washburn Robinson*

Dated:  May 21, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of May 2008 a true and correct copy of the foregoing

Plaintiff's Supplemental Memorandum in Response to WMATA's Objections to Magistrate

Judge's Rulings On Plaintiff's Motion to Compel Discovery was served on the defendant

through the Court's ECF system.

David J. Shaffer
Kathleen Ann Carey
WASHINGTON METROPOLITAN TRANSIT AUTHORITY
600 Sixth Street, NW
Washington, DC 20001
dshaffer@wmata.com
kcarey@wmata.com

　　　　　　　　　　　　　　 /s/  Richmond T. Moore
　　　　　　　　　　　　　　Richmond T. Moore
　　　　　　　　　　　　　　 WILLIAMS & CONNOLLY LLP
　　　　　　　　　　　　　　 725 12th Street, NW
　　　　　　　　　　　　　　 Washington, DC 20005-5901
　　　　　　　　　　　　　　 (202) 434-5000
　　　　　　　　　　　　　　 *rtmoore@wc.com*

| | |
|---|---|
| **From:** | Kathleen Carey [kcarey@wmata.com] |
| **Sent:** | Wednesday, May 14, 2008 5:43 PM |
| **To:** | Moore, Richmond |
| **Subject:** | Privilege Log |

**Attachments:**     privilege log.wpd; privilege log.rtf

 

privilege log.wpd (7     privilege log.rtf (4
KB)                              KB)

**Rich**

**Please see attached**
**Kathleen**


**Kathleen A. Carey**
**Assistant General Counsel**
**WMATA**
**600 5th Street, N.W.**
**Washington, D.C.20001**
**202-962-1496**
**kcarey@wmata.com**


**THIS E-MAIL MESSAGE IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE RECIPIENT NAMED ABOVE.  IF THE READER OF THIS MESSAGE IS NOT THE NAMED RECIPIENT, OR THE AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, YOU ARE NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, COPYING OR OTHER USE OF THIS INFORMATION COMMUNICATION IS STRICTLY PROHIBITED AND NO PRIVILEGE IS WAIVED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE ABOVE-NAMED INDIVIDUAL IMMEDIATELY, COLLECT IF NECESSARY.**

A. All documents in Kevin McIlwain's Medical File

1.  Referral Form dated December 3, 2005 from Supervisor William Hall
2.  Email to Jeanne Fahnbulleh from Melvin Williams, Office of General Counsel, and from Mark F. Sullivan
3.  Test History Report
4.  Alcohol Testing Form dated December 3, 2005
5.  Alcohol Testing Form dated August 11, 2006
6.  Medical Examination Report dated November 25, 2005
7.  Federal Drug Testing Custody and Control Form dated November 25, 2005
8.  U.S. DOT  Drug Testing Custody and Control Form dated November 25, 2005
9.  Referral for Medical Examination Dated January 2, 2004
10. Medical Examination Report dated January 2, 2004
11. U.S. DOT  Drug Testing Custody and Control Form dated  January 2, 2004
12. Federal Drug Testing Custody and Control Form dated  January 2, 2004
13. U.S. DOT  Drug Testing Custody and Control Form dated November 14, 2003
14. Federal Drug Testing Custody and Control Form dated November 14, 2003

B. Documents from Division Files

1. Street Supervisor Accident Report dated October 23, 2004 by Supervisor Richard Winston - Hit and Run, Property Damage only
2. Supplemental Report by Operator McIlwain to October 23, 2004 incident
3. Accident Report Form dated October 23, 2004 - vehicle collision
4. Joint Letter to A/D Pilot Program Participants from Local 689 and Robert L. Ballard dated September 29, 2005
5. Record of Disciplinary Action dated May 16, 2005 by Michelle Andrews
6. Accident Report Form dated February 28, 2005 by E. Anderson
7. Street Supervisor's Report dated February 21, 2005 by James Lee
8. WMATA Motor Vehicle Accident Form dated February 21, 2005
9. Investigation Report - No Report Accident dated March 31, 2004 by Ora B. Crutchfield
10. Investigation Report - on board assault - dated October 26, 2004 by William S. Proctor, II
11. WMATA Motor Vehicle Accident Form and Supplemental Report by Operator McIlwain to  October 26, 2004 incident
12. Investigation Report by E. Anderson dated February 23, 2005 to Operator McIlwain
13. Personnel Action Report Dated January 20, 2004 - New hire
14. Personnel Action Report Dated September 14, 2004 - Promotion
15. Investigation Report Dated April 26, 2005 by S.L. Smith - complaint
16. Supervisor Report and Investigation Report dated March 20, 2006 -SOP violation
17. Supervisor Report and Investigation Report dated January 24, 2006 -SOP violation

18. Personnel Action Report dated August 24, 2006 - Separation
19. Accident Report Form dated February 18, 2006 by Robert Ballard
20. Street Supervisor Report dated February 18, 2006 by William F. Hall - vehicle collision
21. WMATA Motor Vehicle Accident Report dated September 16, 2005 by Operator McIlwain
22. WMATA Motor Vehicle Accident Report dated February 18, 2006 by Operator McIlwain

SUPPLEMENTAL QUESTIONS TO BUSV ACCIDENT REPORTS

| E | TIME | DIVISION | LOCATION OF ACCIDENT |
|---|------|----------|----------------------|
| 9/16/05 | 4:52 | | |

Direction of object.    N    E    (S)    W
                           (circle one)

When you first saw the object, where was your bus?  approx 7-8 feet

Was your bus moving at this time?  YES        If yes, how fast?  15-20        MPH
Where was the object when first seen by you?  Walking to the Crosswalk

Was the object moving or standing? _____ If moving, how fast?  N/A        MPH
Was your bus overtaking object? _____
Was object moving over (changing lanes) toward your bus?  NO
What warning signals were given by you?  blew horn
What signals were given by the other party?  none
How far did the bus move after the collision before stopping?  2-3        ft.
How far did the other party move after the collision before stopping?  N/A        ft.
State position of bus and object after the collision.  Bus partially in other
lane, ped was standing in street

What part of the bus collided with what part of the object?  Side of bus, ped right
hand.

Describe fully the nature and extent of damage to the object.  N/A

Where did marks of contact start and end on the bus?  none

What color was the traffic light facing the bus when it entered the intersection?
                                                      Green
Which vehicle had a stop sign?  She had to stop  Did it stop?  N/A
Which vehicle entered the intersection first? _____ N/A
How far was the other vehicle from the intersection at that time? _____ N/A

_____              005773
(Employee signature)              (Employee number)

1353369      B      DC        West
(License number   Class   MD-VA-DC)      (Division)

1311 Delafield          Wash      DC    20011
(Employee's Home Address        City      State   Zip Code)

13.295 (1/86)

WMATA 00017

# ACCIDENT REPORT FORM

**M metro**

| 1. FORM HEADED UP BY: (INITIALS) **RLB** | 2. DIVISION / SECTION **BTRA / WETR** | DIVISION CODE **3225 / 3510** | BUSV / SAFETY **PED-14** |
|---|---|---|---|

| 3. DATE OF ACCIDENT: **09/ 16/ 05** | TIME: **04 : 52 : PM** | VEHICLE NUMBER: **9304** | RUN NUMBER: **519** | BLOCK NUMBER: **WN-24** | ROUTE NUMBER: **N-2** |
|---|---|---|---|---|---|

| 4. LOCATION OF ACCIDENT: On Massachusetts Avenue @ Belmont | AREA: **DC/NW** | DESTINATION: Farrgut Square |
|---|---|---|

| 5. EMPLOYEE INVOLVED: Mcilwain, Kevin | EMPLOYEE NO.: **005773** | JOB STATUS:   NEW SERVICE ☐ FULL TIME ☒   PART TIME ☐ | SENIORITY: **03/ 05/ 04** | DATE OF BIRTH: **09/ 16/ 70** |
|---|---|---|---|---|

**3**

## ACCIDENT RECORD FOR THE PAST 365 DAYS

| DATE | *N.P | *PRE | *MIN | *MAJ | ACTION TAKEN | DATE | *N.P | *PRE | *MIN | *MAJ | ACTION TAKEN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/ 23/ 04 | ☒ | ☐ | ☐ | ☐ | NONE | / / | ☐ | ☐ | ☐ | ☐ | |
| 02/ 21/ 05 | ☒ | ☐ | ☐ | ☐ | NONE | / / | ☐ | ☐ | ☐ | ☐ | |
| / / | ☐ | ☐ | ☐ | ☐ | | / / | ☐ | ☐ | ☐ | ☐ | |

*RATINGS   N.P = NON-PREVENTABLE   PRE = PREVENTABLE   MIN = MINOR   MAJ = MAJOR

## INVESTIGATION BY THE DIVISION SUPERINTENDENT OR SUPERVISOR

6. DID YOU VISIT THE SCENE OF THE ACCIDENT?   YES ☐   NO ☒   DATE: / /   TIME: :

7. IF NOT, ARE YOU THOROUGHLY FAMILIAR WITH SCENE OF THE ACCIDENT   YES ☒   NO ☐

8. DID YOU INSPECT THE EQUIPMENT INVOLVED?   YES ☐   NO ☒   DATE: / /   TIME: :

9. WHO WAS PRESENT AT THE TIME OF INSPECTION?   **N/A**

10. WAS A BRAKE TEST PERFORMED?   YES ☐   NO ☒   DATE: / /   BRAKE READINGS

11. WAS A TRAFFIC CITATION ISSUED?   YES ☐   NO ☐   IF SO TO WHOM?   Pending

| 12. EMPLOYEE PERMIT NUMBER **13-53569** | STATE **DC** | CLASSIFICATION  A Ⓑ C D E Ⓟ | EXPIRATION DATE **09/ 16/ 07** | RESTRICTIONS: **NONE** |
|---|---|---|---|---|

## ACTION TAKEN BY THE DIVISION SUPERINTENDENT OR SUPERVISOR

EXPIRATION DATE **DOT CARD** 01-2-06

| 13. PREVENTABLE | NON - PREVENTABLE | MINOR | MAJOR | DATE OF TRAINING: |
|---|---|---|---|---|
| | REDACTED | | | |

14. I FULLY UNDERSTAND THAT I HAVE FIVE (5) BUSINESS DAYS TO APPEAL THE ACTION TAKEN.   INITIAL *KM*

15. APPEAL: YES ☐   NO ☒   APPEAL DATE: / /   APPEAL HEARING: / /

APPEAL DECISION:   GRANTED ☐   DENIED ☐   APPEAL RETURN: / /   FAILED TO FILE APPEAL WITHIN (5) DAYS: ☐

16. ACTION TAKEN:   REDACTED

17. SUPV. SIGNATURE *Gabriel J. Ballard*   TITLE: **Asst. Superintendent**   DATE: 09 29 05

## I CERTIFY THAT THE ABOVE HAS BEEN CALLED TO MY ATTENTION TODAY

| EMPLOYEE SIGNATURE *Kevin McIlwain* | PAYROLL: **005773** | DATE: 9 /29 /05 |
|---|---|---|

NOTE: REMARKS MAY BE WRITTEN IN THE SPACE PROVIDED ON THE SECOND PAGE OF THIS FORM
THIS MUST BE DONE AT THE TIME THE REPORT IS SIGNED BY THE EMPLOYEE CONCERNED.

13.296 (Rev 04/00)   (S.L.S.)   Original - BUSV /SAFETY 1st Copy -DIVISION   2nd Copy -EMPLOYEE   3rd Copy -UNION

WMATA 00136

| 1. SUMMARY OF EMPLOYEE STATEMENT. | 3. INTERVIEWER'S RATIONALE FOR CONCLUSION REACHED. |
| --- | --- |
| 2. INTERVIEWER'S INSTRUCTIONS TO EMPLOYEE. | |

Metrobus # 9304 was traveling E/B on Massachusetts Avenue in the curb lane preparing to make a service stop. The pedestrian was standing on the curb at the crosswalk.

Operator states there were three people waiting to board a the bus stop so he was slowing to approximately ten mph to service the bus stop when he saw the pedestrian walking toward the street from the sidewalk, with the left side of the male pedestrian blocking her view of on coming traffic. The pedestrian then pointed her right hand towards the street and then stepped in the street without looking. Operator further states he swerved into the second lane to avoid making contact to the pedestrian, but made contact to the right arm of the pedestrian. Operator states that the bus did not knock the pedestrian down.

The right front side near the front door made contact to the right hand of the pedestrian.  The pedestrian was transported to George Washington Hospital by medic # 1, her injuries are unknown at this time. Police took a report the charges are pending.

REDACTED

EMPLOYEE'S COMMENTS

13.29613 (05/96) (G.J.)

Use Separate Sheet If More Space Is Needed

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

------------------------------x

JANE WASHBURN ROBINSON,          :

    Plaintiff,                  :

     -vs-                     :    Civil Action

THE WASHINGTON METROPOLITAN  :    No. 1:07-cv-1072

AREA TRANSIT AUTHORITY,          :

    Defendant.                  :    PAGES 1 - 116

------------------------------x

Deposition of Kevin McIlwain

Washington, D.C.

Tuesday, March 25, 2008

Reported by:  Tammy S. Newton

JOB NO. 186459

00bfde8d-4c86-4690-805a-1d7769520de0

Kevin McIlwain

Page 88

1    be corrected.  About an hour.

2        Q    What were the results of the urine test?

3        A    I mean, they didn't discipline me as far

4    as -- I guess -- as far as letting me -- it's clean.

5    It's clean because I don't do anything.  I stopped

6    drinking and everything.

7        Q    Did you see the results of the urine test?

8        A    No.

9        Q    Did anyone ever tell you what the results

10   of the urine test were?

11       A    No.  They just informed me once it came

12   back will I be able to come back to work or not.

13       Q    And did -- is the urine test a routine

14   requirement or is that because of a previous history?

15       A    As far as I know, it's routine.

16       Q    So you told the investigators that you need

17   to come downtown to take a urine test, and how did you

18   get downtown?

19       A    Mr. Williams, Supervisor Williams.

20       Q    After you -- after you had taken the urine

21   test, then what happened?

22       A    Went back to the garage, filled out an

00bfde8d-4c86-4690-805a-1d7769520de0

Kevin McIlwain

Page 95

1      Q    And this was taken shortly after -- at

2    least by October 5th, '05.  So within days after Ms.

3    Robinson's accident, correct, this accident report

4    form?

5      A    I guess.  But the date of this accident.

6      Q    How many accidents did you have before Ms.

7    Robinson's?

8      A    One.

9      Q    So this form is incorrect when it lists two

10   accidents?

11     A    If I have to go on my recollection, yes.

12     Q    You don't recall any accident on February

13   21st, 2005?

14     A    No.

15     Q    So this -- even though this form indicates

16   there was an accident on February 21st, 2005, you had

17   no recollection of that?

18     A    No.

19     Q    But you do have a recollection of an

20   accident after Ms. Robinson's accident?

21     A    Yes.

22     Q    What was that about?

Kevin McIlwain

Page 96

1        A        Going -- doing the 30 lines -- going

2    through Washington Circle, four lanes, you have a far

3    left, you have a middle, you have a right, and you

4    have a turning lane.  And a right lane, you can either

5    go straight across or go around the circle or you can

6    turn with the car to turn left.  The person in the

7    middle lane cut across from the middle lane to turn

8    down George Washington Hospital from the middle lane.

9    She got two lanes to go across, which is the improper

10   lane to come from anyway.  And she hit the bus.

11       Q        Were you charged in that accident?

12              MS. CAREY:  Same objection as previously.

13   I mean, charged by the police?

14   BY MR. MOORE:

15       Q        Charged by the police in that accident?

16       A        No.

17       Q        Were you charged by WMATA with that

18   accident?

19              MS. CAREY:  Same objection.  Don't answer

20   please.

21   BY MR. MOORE:

22       Q        Did WMATA do a report?

00bfde8d-4c86-4690-805a-1d7769520de0

Kevin McIlwain

Page 97

1      A      As far as I know.  The police was there.

2  Supervisor was there.

3      Q      Did you fill out similar paperwork with

4  respect to that accident?

5      A      Yes.

6      Q      Do you recall who -- who was present and

7  who you provided the statement to about that accident?

8      A      Supervisor Mr. Hall, he was there.  I don't

9  know the police name.

10     Q      Is he an attorney?

11     A      Mr. Hall?

12     Q      Yes.

13     A      No.  He's a supervisor.

14     Q      He's a street supervisor?

15     A      Yes.

16     Q      Did you talk to the police about that

17  accident?

18     A      Yes.

19     Q      And when was that accident?

20     A      It might have been late '05 -- late '05.

21  It wasn't -- it wasn't beginning of '05.  Late '05.

22     Q      So Ms. Robinson was in September of '05?

00bfde8d-4c86-4690-805a-1d7769520de0

Kevin McIlwain

Page 98

1      A    And that happened later.  That happened

2  after -- after Ms. Robinson.

3      Q    But still in '05?

4      A    Either late '05 or early '06, but I know it

5  wasn't 2/21/05.

6      Q    Okay.  Did that accident involve a traffic

7  signal?

8      A    I don't know anything about that.

9      Q    Sorry.  The accident in late '05, '06.  You

10  described it was at an intersection.  Did it involve a

11  traffic signal and whether the light was red or green?

12           MS. CAREY:  I'm going to object to the

13  characterization.  But go ahead, if you can answer.

14  You said it was an intersection and it was a traffic

15  signal involved.

16           THE WITNESS:  I mean, it -- it's hard for

17  me to explain that because we're going around

18  Washington Circle, and there's lights all around

19  Washington Circle.

20  BY MR. MOORE:

21      Q    It was a bad question.  Let me try again.

22           Was there a dispute as to whether you ran a

Kevin McIlwain

Page 99

1   red light?

2       A   No.

3       Q   Okay.  Did it involve a pedestrian?

4       A   No.

5       Q   While you were driving a bus for WMATA, did

6   you have any incidences where you were -- other than

7   Ms. Robinson's -- where you struck a pedestrian?

8       A   No.

9       Q   Did you have any other instance where you

10  were accused of running a red light?

11      A   No.

12      Q   Were you involved in any other traffic

13  accidents other than the ones we've discussed here

14  today while you were driving for WMATA?

15      A   No.

16      Q   Have you been involved in any incident

17  other than the time when you were driving with a bus

18  for WMATA outside of that context where you struck a

19  pedestrian while driving?

20      A   No.

21      Q   So while you were driving your personal

22  vehicle?

00bfde8d-4c86-4690-805a-1d7769520de0

Kevin McIlwain

Page 111

1    of Massachusetts Avenue as you're heading towards

2    Farragut North, between Waterside Drive and Belmont

3    Street, isn't there the Islamic Center right there?

4         A    The mosque.

5         Q    And Waterside Drive actually drops you

6    down -- if you take Waterside, if you make the

7    right-hand turn here, Waterside Drive drops you into

8    Rock Creek Park, correct?

9         A    Yes.

10         Q    Belmont Street doesn't -- Belmont Street

11   does not extend across Massachusetts Avenue?  Doesn't

12   it stop?

13         A    It stops.

14         Q    It's a T intersection right there, correct?

15         A    Yes.

16         Q    So at these lines drawn on the opposite --

17   on the side of the diagram that would be closest to

18   Rock Creek Park don't represent continuation of

19   Belmont Street or Belmont Road?

20         A    No, it don't.

21         Q    Exhibit No. 4, doesn't NP mean

22   non-preventable?

00bfde8d-4c86-4690-805a-1d7769520de0

Kevin McIlwain

Page 112

1      A      Yes.

2      Q      So on these -- at least October 23rd, 2004,

3  the incident that you recall you were found to have

4  been in an accident that was not preventable by you,

5  correct?

6      A      Yes.

7      Q      And to the extent that there is an accident

8  on 2/21/05, that was the same rating for that

9  accident, correct?

10     A      Yes.

11     Q      Okay.  And this could be either an accident

12 or an incident on the bus, correct?

13     A      Correct.

14     Q      I wasn't sure if we ever really got

15 clarification on the arrow that controls the turning

16 lane from Massachusetts Avenue onto Belmont.

17     A      Yes.

18     Q      Are you with me?

19     A      Yes.

20     Q      Does the -- does Massachusetts Avenue widen

21 at its intersection with Belmont to create a turn only

22 lane, or is there -- or -- let me ask you that.

Was alcohol test completed within 2 hours of accident?    (Yes)    No    If no, explain:

_____

_____

Was alcohol test completed within 8 hours of accident?    (Yes)    No
If no alcohol test occurred because more than eight hours elapsed from time of accident please explain:

_____

_____

Was drug test completed within 32 hours of accident:    (Yes)    No
If no drug test was performed because more than 32 hours passed since the time of accident please explain:

_____

_____

Were there other employees whose performance could have contributed to this accident?    Yes    (No)
If yes, were they tested?    Yes    No

_____

Based on the information available, can the employees' performance be completely discounted as a causative or contributing factor to the accident?    (Yes)    No    Please explain:

_____

_____

Name of Supervisor
Completing Form:  Williams, Norman E. /  Norman E Williams    Phone 3/523-3753
                            Print                         Signature

**\*A Supervisor must accompany employee to FTA Post Accident Testing**

Additional Comments: Operator was preparing to service a bus stop when a pedestrian was stepping off the sidewalk into the crosswalk against the light with her right hand extended. The operator swerved to avoid her but her right hand hit the right side front portion of the bus. No visible damage or blood. Patron was transported to G.W. hospital.

SEP 16 PM 6:43

WMATA 00046

10